395 S.E.2d 773

**STATE of West Virginia ex rel. Ricky STARR, Michael Bryant, Bobby Chafin, Tim Preece, Albert Rush Cline and Mike Holbrook**

v.

**Honorable Robert C. HALBRITTER, Duly Appointed and Acting Special Judge of the Circuit Court of Logan County, West Virginia, and Donald C. Wandling, Prosecuting Attorney of Logan County, West Virginia.**

No. 19649.

Supreme Court of Appeals of West Virginia.

June 28, 1990.

the Circuit Court of Logan County, West Virginia. We previously issued a rule to show cause why the requested relief should not be awarded. Having reviewed the petition and the exhibits thereto and the briefs and oral argument of counsel, this Court concludes that the writ of prohibition should be awarded for the reasons set forth herein.

## I

Each of the petitioners was indicted in September, 1989, by the grand jury attending the September Term of the Circuit Court of Logan County, West Virginia. The alleged offenses were incident to labor unrest in that county and involved a shooting incident and an endloader incident. Each of the petitioners was indicted for attempted murder; petitioner Starr was also indicted for malicious assault. All but two of the petitioners were also indicted for conspiracy to commit malicious assault.

■ The procedure utilized to obtain these indictments was as follows. The prosecuting attorney furnished grand jury memorandum forms to the grand jury. After hearing the evidence presented by the prosecutor's witnesses, the grand jury inserted on these forms the name of the victim, the nature and date of the alleged crime, the name(s) of the witness(es) and a summary of the evidence. The foreperson of the grand jury signed the grand jury memorandum forms and marked (circled) on each that the grand jury had "found" a "true bill." [2] Because a "true bill" was circled on each of the memorandum forms, the prosecutor thereafter drafted formal indictments and signed and presented them to the foreperson for her to sign. The grand jury as a body did not ever see the actual indictments.[3]

Robert B. King, Robert B. Allen, John J. Polak, King, Betts & Allen, Charleston, for Michael Bryant, Bobby Chafin, Tim Preece, Albert Cline and Mike Holbrook.

Roger W. Tompkins, Atty. Gen., Joanna Tabit, Asst. Atty. Gen., Atty. General's Office, Charleston, for Robert C. Halbritter and Donald C. Wandling.

Jeffrey M. Wakefield, Kay, Casto, Chaney, Love & Wise, Charleston, Michael Thornsbury, Williamson, for Ricky Starr.

McHUGH, Justice:

In this original proceeding the relators, Ricky Starr, Michael Bryant, Bobby Chafin,[1] Tim Preece, Albert Rush Cline and Mike Holbrook, seek a writ of prohibition precluding their being tried on allegedly void indictments pending against them in

1. The petition filed with this Court indicates that the indictment of this individual contains an incorrect spelling of his last name; the correct spelling is "Chaffins."

2. Effective August 1, 1987, Rule 6(c) of the *Federal Rules of Criminal Procedure* was amended to change the designations of "foreman" and "deputy foreman" to "foreperson" and "deputy foreperson," respectively. While Rule 6(c) of the *West Virginia Rules of Criminal Procedure*

has not been amended in this manner, we will use the more modern "foreperson" in this opinion.

3. The indictments in this case were returned formally in open court with the grand jury present, but at the same time as scores of unrelated indictments against other persons. The record of the grand jury proceedings indicates that the trial court did *not* inquire separately as to whether the grand jury had found each in-

In this case the grand jury memorandum forms indicate that petitioner Starr was charged by the grand jury with malicious assault, and "all others" (of the petitioners named therein) were charged with attempted murder. However, the actual indictments, drafted thereafter by the prosecutor, charge petitioner Starr with malicious assault *and* attempted murder, and the other named petitioners were charged with attempted murder. Each of the petitioners except for Messrs. Cline and Holbrook was also charged in the indictments with conspiracy to commit malicious assault.

The petitioners moved to dismiss the indictments for several alleged irregularities in the grand jury proceedings, including the use of the above described procedure in obtaining the indictments. The petitioners argued that such procedure is constitutionally flawed in that it does not result in indictments found by a grand jury but, instead, found by the prosecutor and the grand jury foreperson.

The trial court denied the motion to dismiss the indictments. It held, *inter alia,* that there was no showing of prejudice, except with respect to the conspiracy charges, which were dismissed as having been added by the prosecutor. The trial court employed a balancing test and concluded that society's interest in the effective administration of justice outweighed the petitioners' rights.

The petitioners subsequently brought this prohibition proceeding, seeking to prevent their being tried on the allegedly void indictments.

## II

■ Article III, section 4 of the *Constitution of West Virginia* provides, in relevant part, that "[n]o person shall be held to answer for treason, felony or other crime, not cognizable by a justice [now called a magistrate], unless on presentment or indictment of a grand jury."[4] "An indict-

dictment but, instead, referred collectively to all of the indictments being returned that day. Thus, in addition to not seeing the actual indictments, the grand jury did not hear the contents of the indictments.

Consequently the form orders prepared by the prosecutor stating that the trial court inquired of the foreperson of the grand jury as to whether at least twelve of the grand jurors concurred in the finding of the indictments did not "cure" the defect in this case because the grand jurors as a body were never apprised of the terms of the indictments and were, therefore, never given the chance to approve the indictments.

4. Similarly, the fifth amendment to the *Constitution of the United States* provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."

At common law a presentment, properly speaking, was the notice taken by a grand jury of any offense from their own knowledge or observation, without any bill of indictment laid before them at the suit of the king, as the presentment of a nuisance, a libel and the like; upon which the officer of the court must afterwards frame an indictment before the party presented can be put to answer it. 4 W. Blackstone, *Commentaries* *301. *See also Hale v. Henkel,* 201 U.S. 43, 59–66, 26 S.Ct. 370, 373–75, 50 L.Ed. 652, 659–62 (1906), *disapproved on another point, Murphy v. Waterfront Commission of New York Harbor,* 378 U.S. 52, 65–70, 84 S.Ct. 1594, 1602–05, 12 L.Ed.2d 678, 687–90 (1964). Thus, a presentment, with respect to a

felony charge, was regarded at common law as nothing more than instructions given by the grand jury to the prosecuting attorney for framing an indictment for an offense which the grand jury had found to have been committed. Upon a presentment for a felony, the indictment for such felony was prepared by the prosecuting attorney for submission to the grand jury; upon the grand jury's finding it a true bill, the prosecution commenced upon that indictment, into which the felony presentment merged. *Commonwealth v. Christian,* 48 Va. 323, 325, 7 Gratt. 631, 635–37 (1850), *opinion on denial of reh'g.*

We note that the *West Virginia Rules of Criminal Procedure,* and particularly Rule 7(a), do not refer to prosecutions based upon presentments. Rule 7(a) of the *West Virginia Rules of Criminal Procedure,* effective October 1, 1981, *see W.Va. R.Crim.P.* 59, provides:

(a) *Use of Indictment or Information.* An offense which may be punished by life imprisonment shall be prosecuted by indictment. Any other felony offense may be prosecuted by information if the indictment is waived. Any misdemeanor may be prosecuted by indictment or information. An information may be filed without leave of court.

This rule is derived from the similar Rule 7(a) of the *Federal Rules of Criminal Procedure.* The advisory committee's note 4 to Federal Rule 7(a) states that a "[p]resentment is not included as an additional type of formal accusation, since presentments as a method of instituting prosecutions are obsolete, at least as concerns the Federal courts."

ment may be found only upon the concurrence of 12 or more jurors." *W. Va. R. Crim. P.* 6(f), in relevant part. *See also W. Va. Code,* 52–2–8 [1931] (same requirement under statute prior to adoption of *West Virginia Rules of Criminal Procedure*). The common law also required the concurrence of at least twelve of the grand jurors to find an indictment. 4 W. Blackstone, *Commentaries* *306. The function of the grand jury as a body, that is, at least twelve members thereof, finding probable cause to accuse a person of a certain crime is fundamental to the integrity of the grand jury proceedings: "A valid indictment or presentment can be made only by a grand jury; and no court [or prosecutor] can [properly] make an indictment in the first instance or alter or amend the substance of an indictment returned by a grand jury." Syl. pt. 5, *State v. McGraw,* 140 W.Va. 547, 85 S.E.2d 849 (1955), as modified. *Accord,* syl. pt. 2, *State v. Pruitt,* 178 W.Va. 147, 358 S.E.2d 231 (1987). Furthermore, "a valid presentment or indictment of a grand jury is, in this [s]tate, a condition precedent to a conviction for a felony[.]" *McGraw,* 140 W.Va. at 558, 85 S.E.2d at 856 (quoting *Scott v. Harshbarger,* 116 W.Va. 300, 301, 180 S.E. 187, 187–88 (1935)). In other words, a valid indictment is a jurisdictional prerequisite to a valid conviction.

■ Accordingly, the irregularity in the grand jury proceedings at issue here, specifically, the failure of the grand jury to deliberate and vote upon the actual indictments, was a fundamental error which so compromised the structural protections of the grand jury as to constitute prejudice *per se.* This type of error was mentioned in the recent leading case of the Supreme Court of the United States on errors in grand jury proceedings, *Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988):

To be distinguished from the cases before us are [sic] a class of cases in which indictments are dismissed, without a particular assessment of the prejudicial impact of the errors in each case, because the errors are deemed fundamental. . . . [T]hese cases are ones in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the [irrebuttable] presumption of prejudice.

*Id.* at 257, 108 S.Ct. at 2375, 101 L.Ed.2d at 238.

■ In cases not involving such fundamental errors, the rule is that dismissal of an indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from the substantial influence of such violations. Syl. pt. 6, *State ex rel. Pinson v. Maynard,* 181 W.Va. 662, 383 S.E.2d 844 (1989) (quoting *Bank of Nova Scotia v. United States,* 487 U.S. 250, 256, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228, 238 (1988)). Even if we were to apply this test to the fundamental violation in the present case with respect to the lack of a vote on the actual indictments, our holding would be the same. It is clear from the face of the record that the prosecutor added all of the conspiracy charges and added the attempted murder charge to the grand jury's finding with respect to petitioner Starr. Consequently there is "grave doubt" that the indictments were free from the substantial influence of these violations.

In *State ex rel. Miller v. Smith,* 168 W.Va. 745, 285 S.E.2d 500 (1981), this Court observed that "historically the grand jury serves a dual function: it is intended to operate both as a sword, investigating cases to bring to trial persons accused on just grounds, and as a shield, protecting citizens against unfounded malicious or

Pursuant to article VIII, section 3 of the *Constitution of West Virginia,* Rule 1 of the *West Virginia Rules of Criminal Procedure* and *W. Va. Code,* 51–1–4 [1935], Rule 7(a) of the *West Virginia Rules of Criminal Procedure,* quoted above, supersedes *W. Va. Code,* 62–2–1 [1931], which

provided, in pertinent part: "Prosecutions for offenses against the State, unless otherwise provided, shall be by presentment or indictment. The trial of a person on a charge of felony shall always be by indictment[.]"

frivolous prosecutions." *Id.* 168 W.Va. at 751, 285 S.E.2d at 504. Here the function of the grand jury as a shield against unfounded prosecutions was eliminated by the failure to submit the actual indictments—containing the charges added by the prosecutor—to the grand jurors for their approval. This procedure is not a technical violation subject to harmless error analysis, but is, instead, a basic violation striking at the heart of the grand jury proceedings. We will not condone such a violation. *See W.Va.Const.* art. III, § 20 ("[T]he blessings of liberty can be preserved to any people only by a firm adherence to justice ... and by a frequent recurrence to fundamental principles").

This Court is not alone in its condemnation of the type of grand jury proceedings discussed above. The leading case on point is *Gaither v. United States,* 413 F.2d 1061 (D.C.Cir.1969), *as modified on petition for reh'g,* 413 F.2d at 1081. The court held in *Gaither* that "the signature of the foreman [on the indictment] cannot in itself convert the indictment, admittedly not seen by the full grand jury, into one properly found by 12 jurors as required by Rule 6 (f)" of the *Federal Rules of Criminal Procedure. Gaither,* 413 F.2d at 1071. Continuing, the court held:

> We conclude then that Rule 6 requires the grand jury as a body to pass on the actual terms of an indictment. We are impelled to this conclusion largely by the constitutional [fifth amendment] principles ... which emphasize the right of the accused to be tried on an indictment which has in each material particular been approved by a grand jury.

*Id.* The court stated that the concept of harmless error usually is not applied to substantive amendments to indictments added by a trial court or the prosecution. *Id.* at 1072.

The original opinion in *Gaither,* though, required the litigants in that case and other persons similarly situated to prove prejudice by showing from the transcripts of the grand jury proceedings that the evidence did not support the indictments. That result was reached originally because of the large number of indictments in that circuit which had been obtained based upon the defective procedure. In its opinion on rehearing the court in *Gaither* modified its original opinion. After the initial opinion the prosecution convinced the court that the retroactive application of the holding would have placed a very serious burden on the administration of justice by significantly delaying trials. The court therefore ruled that the holding would be given a prospective application only, except with respect to the two litigants in that case who had challenged the procedure in question. The indictments against them were dismissed (apparently without prejudice to the right to reindict them).

■ *State v. Grose,* 387 N.W.2d 182 (Minn.Ct.App.1986), citing *Gaither,* also dismissed indictments for the same defect. The court in *Grose* observed that the criminal procedure rules in Minnesota require that at least twelve grand jurors must concur in the indictments. In *Grose,* the grand jury failed to deliberate and vote on the final indictments as drafted by the prosecutor, who had read to the grand jury the proposed indictments, answered questions and made proposed modifications to the indictments, but who had never submitted the final indictments to the grand jurors for their vote. 387 N.W.2d at 189–90. The opinion in *Grose* states the correct procedure:

> Normally, after all the evidence is heard, a grand jury deliberates and votes to indict. After the vote, if a sufficient number of votes for the indictment exists, the prosecutor drafts the indictment and the proposed indictment is then submitted to the grand jury for its approval. If accepted by them, it becomes the formal indictment.

*Id.* at 190.[5] *See also United States v. Chanen,* 549 F.2d 1306, 1312 (9th Cir.) (grand jury must review indictment and

---

**5.** The initial use of grand jury "memorandum" forms or so-called "presentment" forms is not a defective procedure *per se;* the problem arises when, as in the present case, the grand jurors are not given the opportunity to vote on the actual indictments.

adopt it as its own), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977); *United States v. Brumfield,* 85 F.Supp. 696, 704 (W.D.La.1949) (prosecutor submits indictment to grand jury, and if grand jury accepts or adopts indictment as being supported by facts, it becomes formal indictment, regardless of who prepared it).

In *DeVincent v. United States,* 602 F.2d 1006 (1st Cir.1979), the court remanded the case to permit a showing that the *Gaither* rule had been violated. *Id.* at 1008–10. On appeal after remand, the court concluded that the accused had not produced any evidence to support his claim that the grand jury as a body had not approved the actual language of the indictment. *United States v. DeVincent,* 632 F.2d 147, 154 (1st Cir.), *cert. denied,* 449 U.S. 986, 101 S.Ct. 405, 66 L.Ed.2d 249 (1980).[6] In the case now before us, however, it is undisputed that the grand jury never saw the actual indictments. Accordingly, we do not hesitate to follow *Gaither.*

The prosecution in this case relies primarily upon *United States v. Jeffries,* 45 F.R.D. 110 (D.D.C.1968), *opinion as supplemented,* 45 F.R.D. at 113. The court there held that the indictment need not be dismissed even though the text of the indictment was never submitted to the grand jury for a vote. The grand jury had earlier voted on a so-called "presentment," after which the prosecution drafted the indictment. Only the foreman and the secretary of the grand jury saw the indictment. The court remarked that research had not disclosed any federal case on point and that there was no showing of prejudice. *Id.* at 113–14.

*Jeffries,* an opinion by the United States District Court for the District of Columbia filed in 1968, was not mentioned in *Gaither,* an opinion by the United States Court of Appeals for the District of Columbia Circuit filed in 1969. Nevertheless, it is clear that *Gaither* effectively disapproved and superseded *Jeffries* on the validity of the identical grand jury procedure in the same jurisdiction. In addition, we believe *Gaither* is more in line than *Jeffries* with our cases of *State v. McGraw* and *State ex rel. Miller v. Smith* and with the "fundamental error" teachings of the Supreme Court of the United States in *Bank of Nova Scotia v. United States.*

Two other cases relied upon by the prosecution here are not persuasive and in fact do not contradict *Gaither.* In *United States v. Niedelman,* 356 F.Supp. 979 (S.D. N.Y.1973), the court stated that *Gaither's* mandate was obeyed in that case and in all cases in the Southern District of New York in that the indictment is always present in the jury room when the grand jury votes. *Id.* at 983. *United States v. Richter Concrete Corp.,* 328 F.Supp. 1061 (S.D.Ohio 1971), also states that the grand jury in that case had the indictment before it for deliberation and vote, unlike the defective procedure in *Gaither. Id.* at 1067.[7]

Based upon all of the above, this Court holds that the failure of the grand jury as a

---

**6.** The court in *DeVincent* therefore declined to decide whether and under what circumstances the grand jury's failure to consider the precise language of an indictment requires a dismissal. *DeVincent,* 632 F.2d at 154–55.

**7.** Two cases decided by state courts appear at first blush to contradict *Gaither* but upon closer inspection actually do not. *People v. Campbell,* 194 Colo. 451, 573 P.2d 557 (1978) (en banc), contains a note indicating disagreement with *Gaither* but also indicating that *Gaither* is distinguishable because the Colorado criminal procedure rules explicitly authorize the *foreman* of the grand jury to present the indictment, while Rule 6(f) of the applicable criminal procedure rules in *Gaither* requires an indictment to be returned in open court by the *grand jury.* *Campbell,* 194 Colo. at 454 n. 1, 573 P.2d at 559 n. 1. Rule 6(f) of the *West Virginia Rules of Criminal Procedure,* like its federal counterpart in *Gaither,* requires an indictment to be returned in open court by the grand jury, not just by the foreperson thereof.

Similarly, the court in *People v. Roberts,* 76 Misc.2d 887, 352 N.Y.S.2d 791 (Dutchess County Court 1974), held that it was not necessary to have the formal indictment ratified by the grand jury as a body subsequent to its being drafted. The court relied upon the state procedural rule authorizing the *foreman* to file an indictment with the court. *Id.* at 890–92, 352 N.Y.S.2d at 794–95. As stated above, the grand jury must return the indictment under Rule 6(f) of the *West Virginia Rules of Criminal Procedure.* Moreover, the court in *Roberts,* in an addendum to its opinion, acknowledged that the procedure advanced by *Gaither* "is commendable, and submission of the formal typewritten instrument for ratification by the grand jury

body to vote upon the text of the indictment is a fundamental error so compromising the integrity of the grand jury proceedings as to constitute prejudice *per se,* and the indictment must be dismissed as void, without prejudice to the right of the state subsequently to seek a valid indictment. *See W.Va.Const.* art. III, § 4; *W.Va.R. Crim.P.* 6(f).[8]

 Based upon the same concerns for the disruptive effects on the administration of justice set forth in *Gaither,* discussed previously, our holding applies to these petitioners but otherwise prospectively only, that is, to indictments returned after this opinion is filed.

Prohibition lies in this case because the indictments were void, and the trial court does not have jurisdiction to try a person on a void indictment: "[A]s the court to which a void indictment is returned does not have jurisdiction to try a person so indicted, prosecution of a defendant upon such void indictment will be prevented by a writ of prohibition." Syl. pt. 2, in part, *State ex rel. McCormick v. Hall,* 150 W.Va. 385, 146 S.E.2d 520 (1966), *overruled on another point, State v. Furner,* 161 W.Va. 680, 682–83, 245 S.E.2d 618, 619 (1978).

Accordingly, the writ of prohibition is awarded.

Writ awarded.

---

8. On the usual rule of dismissing invalid indictments *without* prejudice, see syllabus points 1 and 5 of *State ex rel. Pinson v. Maynard,* 181 W.Va. 662, 383 S.E.2d 844 (1989), and the body of that opinion, 181 W.Va. at 668–669, 383 S.E.2d at 850–51.

We are concerned with the *extreme* brevity and general nature of the trial court's charge to the grand jury in this case. "The primary means by which a trial court fulfills its responsibility to insure fairness in grand jury proceedings is through its instructions to grand jurors on their purpose, function, and the procedures

would eliminate in the future any doubt that the instrument did not reflect the actions of the grand jury." *Id.* at 891, 352 N.Y.S.2d at 795. This Court agrees with this conclusion.

to be followed governing their deliberations and determinations." *State ex rel. Hamstead v. Dostert,* 173 W.Va. 133, 140, 313 S.E.2d 409, 416–17 (1984). Furthermore, this Court has held that the prosecutor's instructions on the law to the grand jury must be "court supervised[.]" Syl. pt. 3, in part, *State ex rel. Miller v. Smith,* 168 W.Va. 745, 285 S.E.2d 500 (1981). The circuit courts in this state should include in their charges to grand juries those matters set forth in note 3 of *Hamstead.* 173 W.Va. at 140–141 n. 3, 313 S.E.2d at 417 n. 3.

In light of our ruling on the issue of whether the grand jury must vote on the actual indictments, we do not decide whether the indictments in this case should have been dismissed because the term of one of the jury commissioners had allegedly expired by the time the indictments were returned.