395 S.E.2d 505

**STATE of West Virginia**

v.

**Larmon Troy PICKENS.**

**No. 19193.**

Supreme Court of Appeals of West Virginia.

July 11, 1990.

**5.** *See* W.Va.R.Civ.P. 26.

James T. Kratovil, Kratovil & Kratovil, Weston, for Larmon Troy Pickens.

Roger W. Tompkins, Atty. Gen., Richard M. Riffe, Senior Asst. Atty. Gen., Charleston, for State.

PER CURIAM:

This is an appeal by Larmon Troy Pickens from an order of the Circuit Court of Lewis County sentencing him to one year in the county jail for the misdemeanor offense of battery. On appeal, the defendant claims that, among other things, that the indictment against him should have been dismissed because the grand jury which indicted him was improperly influenced by the special prosecuting attorney. After reviewing the record, this Court believes that the prosecuting attorney did make improper statements and that the prosecutor's action vitiated the defendant's conviction. The judgment of the Circuit Court of Lewis County is, therefore, reversed.

This case grows out of an incident which occurred on October 13, 1987. On that day, Marvin Murphy, a Department of

Highways supervisor, picked up the defendant, Larmon Pickens, at Mr. Pickens' home and took him to a location adjoining Mr. Pickens' property where the Department of Highways was engaged in certain work. Mr. Pickens had previously complained to the Department of Highways about the manner in which department personnel had been doing the work on his property. When he arrived at the scene of the work, Mr. Pickens saw William Cayton, the local supervisor for the Department of Highways, with whom he had had a previous encounter. He had asked that Mr. Cayton not be present during his visit to the site.

After arriving at the site and having a brief discussion with Mr. Murphy, the defendant thought he saw Mr. Cayton coming toward him. He thereupon picked up his cane and struck Mr. Cayton in the head.

The defendant was subsequently indicted for feloniously and maliciously wounding Mr. Cayton and also indicted for simple assault.

Prior to the time the grand jury returned its indictment, David R. Rexroad, a special prosecuting attorney appointed for the case, appeared before the grand jury and presented an unsworn opening statement which described how the incident of October 13, 1987, had occurred and also indicated that previously in October, around October 7, the defendant had had another confrontation with Mr. Cayton, who was later the victim of his actions.

Only one person presented sworn testimony to the grand jury. He was Deputy James E. Browning, and he essentially described how the October 13, 1987, incident had occurred. His description was based on his investigation and statements taken during the investigation.

After hearing the statements, the jury indicated that it intended to return a true bill for a misdemeanor but not return a true bill for a felony. The special prosecutor suggested that there were some problems with the grand jury's returning such an indictment, given the language of the document which he presented, and indicated that he would have to re-do the indictment.[1] He and the court reporter

1. The colloquy proceeded as follows:

MR. REXROAD [the special prosecutor]: Is it your intent, then, to—to not return a true bill on the felony part, but it's your intent to return a true bill on the misdemeanor part?

THE JURY: Yes.

THE JUROR: Well, how do I fix this one here, then?

MR. REXROAD: Well, I think, ma'am, what we'll have to do is re-prepare this Indictment and bring it back in because with it—with it like this, we can't—we can't—we can't find a true bill on half and not a true bill on half. So, I would say that I would bring back another Indictment which just has the second count on it.

And, I'll have to consider whether or not there are any other possibilities if its your intent not to want the felony, whether there's any other possibilities to put in another Indictment when we—when we bring it back for you to consider that.

But, in any event, I don't believe we can use this document.

THE JUROR: What I have here is charged assault, and I have it as a true bill. That's the one we want, this assault one, and that's what it was assault?

MR. REXROAD: Yes.

THE JUROR: Uh huh, okay.

MR. REXROAD: That's what the second account [sic] is. So, I'll just have to come back to meet with you again concerning this one. We won't consider this one being valid even though you've signed it at this time. But, that is the proper way.

(Whereupon, the Prosecutor and the Court Reporter retired from the juryroom.)

(On the record.)

MR. REXROAD: Ladies and gentlemen of the Grand Jury, I've listened to your comments on the Indictment that was presented and—and I'm not sure that you have understood the function of a Grand Jury because I don't know what background you had before I came in here today.

But, as you may know, a Grand Jury only finds the charge, and then it's up to the next jury that hears the evidence, which is a smaller jury or petit jury made up of twelve people, and they consider whether or not there's to be a conviction after they hear all the evidence. They can convict on either of these counts or neither of these—these counts. If they would convict on either one of the counts, that jury doesn't even decide whether there's a penitentiary or a jail sentence. That's up just to the Judge. He decides that, and that's his function in this case.

I know that you have some indicated some confusion, and I would like to know now if it's your intent to indict on both of the counts that we have in the Indictment or just one of the counts. And, I shouldn't be in here when

thereupon retired from the jury room. Later he returned and instructed the jury on the significance of a felony indictment. He and the court reporter then retired again. While they were gone, the grand jury deliberated again and later returned the indictment suggested by the prosecutor which contained the felony charge.

On appeal the defendant claims that the indictment was void and should have been dismissed since the prosecuting attorney improperly influenced the grand jury.

■ In *State ex rel. Miller v. Smith*, 168 W.Va. 745, 285 S.E.2d 500 (1981), this Court discussed at length the role of a prosecuting attorney in the proceedings before a grand jury and noted that the prosecutor's role had been strictly limited by the West Virginia Constitution and the West Virginia Legislature. Relating to this limitation, the Court stated:

> The role of the prosecuting attorney in relation to the grand jury is strictly circumscribed. The prosecutor's responsibility is to attend to the criminal business of the State, and when he has information of the violation of any penal law, to present evidence of those offenses to the grand jury. W.Va.Code § 7-4-1. Thus, the jurisdiction of the prosecuting attorney encompasses only the presentation of evidence. If instructions on law or the legal effect of evidence are in order, those instructions must come from the circuit court. *See* W.Va.Code § 52-2-6 (1981 Replacement Vol.). Any advice to the grand jury by the prosecutor is subject to court supervision. . . .

Accordingly, we hold that a prosecuting attorney who attempts to influence the grand jury by means other than the presentation of evidence or the giving of court supervised instructions, exceeds his lawful jurisdiction and usurps the judicial power of the circuit court and of the grand jury.

*State ex rel. Miller v. Smith, Id.* 168 W.Va. at 757, 285 S.E.2d at 506–07. In reaching this conclusion, the Court explained that historically the grand jury served a dual function: it was intended to bring to trial persons accused on just grounds, and it was intended to protect citizens against unfounded malicious or frivolous prosecutions. The Court noted that in certain areas the grand jury was becoming an extension of the prosecution and increasingly losing its function as a protector of the innocent. *State ex rel. Miller v. Smith, Id.* 168 W.Va. at 751–52, 285 S.E.2d at 504. The Court disapproved of this development and implicitly recognized that it was the result of a procedural system which permitted a prosecutor to influence grand jurors by improperly intruding in the grand jury process.

■ The Court recognized that the limits placed upon the activities of a prosecutor in West Virginia were designed to insure that a grand jury's decision was based upon sworn evidence and upon the grand jurors' independent assessment of the evidence. They were intended to prevent the prosecutor from overriding the grand jurors' independent role and substituting his judgment for their judgment. In syllabus point 2 of the *Miller* case, the

---

you consider that, so what I'll do is, I'll answer any questions that you might have now. Then, I'll step out and let you reconsider this whole Indictment in—in secrecy as it's supposed to be without anybody in here to influence. Then, I'll come back in when you knock and see what your opinion is, if it's changed any.
Is that satisfactory with everybody?
THE JUROR: Could you explain the first account [sic] to us and then the second count?
MR. REXROAD: Yes. The first count is a felony, and that's—that's the one that has the—has the line which here indicates, it has, "Feloniously and maliciously did wound," which means a wicked heart or a bad intention, an intent to do him some bodily harm,

whereas the second count has the same act, but it's done in an unlawful manner, not a felonious manner.
Which means, the maximum that could happen, he could get a jail sentence and not a penitentiary sentence, and he could have done this in some other way than with malice or with a wicked heart or wicked intent. So, there's—there's just a distinction on the grades of the crime there.
And, once you have—if you decide to return both counts, once you have done that, then the other jury will sort out and decide what degree of act this was. Does that answer your question adequately? Any others?
Then, I'll step back out and leave this Indictment with you so you may again consider it.

Court summarized the limits on the prosecuting attorney's authority as follows:

> A prosecuting attorney can only appear before the grand jury to present by sworn witnesses evidence of alleged criminal offenses, and to render court supervised instructions, W.Va. Code § 7–4–1 (1976 Replacement Vol.); he is not permitted to influence the grand jury in reaching a decision, nor can he provide unsworn testimonial evidence.

In syllabus point 3 the Court further indicated that:

> A prosecuting attorney who attempts to influence a grand jury by means other than the presentation of evidence or the giving of court supervised instructions, exceeds his lawful jurisdiction and usurps the judicial power of the circuit court and of the grand jury....

■ In the case presently before the Court, the grand jury, after retiring, informed the special prosecutor that it wanted to return an indictment which contained only a misdemeanor charge. As we have noted, the prosecutor engaged in an extensive discussion with the grand jury, apparently on the basis he thought they were confused. He instructed the jury on the significance of indictment charges and emphasized the role of the petit jury to actually determine the validity of the charge. It is apparent that his statements affected the jury, since it later returned the same indictment which contained the felony count in spite of its earlier intention to indict only on the misdemeanor charge.

This Court also believes that by instructing the jury on the meaning of terms in the indictment without the supervision of the court, the prosecutor exceeded his lawful jurisdiction and usurped the judicial power of the court and of the grand jury within the meaning of *State ex rel. Miller v. Smith, Id.* Under the ruling in that case, the indictment against the defendant must be considered defective and his conviction must be set aside.

The judgment of the Circuit Court of Lewis County is, therefore, reversed; the defendant's conviction is set aside; and the indictment against him is declared a nullity.

Reversed; conviction set aside; indictment declared a nullity.