413 S.E.2d 173

**STATE of West Virginia ex rel. Darrell Gene KNOTTS and Rosalee Juba–Plumley Special Prosecuting Attorney for the 29th Judicial Circuit, Petitioners,**

v.

**Honorable Clarence L. WATT, III, Judge of the 29th Judicial Circuit, Respondent.**

**No. 20207.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 10, 1991.

Decided Dec. 19, 1991.

---

Richard M. Riffe, Charleston, Rosalee Juba–Plumley, Hurricane, for petitioners.

Joanna I. Tabit, Deputy Atty. Gen., Appellate Div., Charleston, for respondent.

MILLER, Chief Justice:

In this original proceeding in prohibition, the issue is whether the Circuit Court of Putnam County exceeded its jurisdiction in failing to quash an indictment. The relators are the defendant, Darrell Gene Knotts, and the special prosecutor, Rosalee Juba–Plumley. The regular prosecutor, O.C. Spaulding, had originally disqualified himself from prosecuting the underlying criminal case. However, the relators contend that the prosecutor's representation of the defendant in certain civil matters while he was an assistant prosecutor, as well as his activities as prosecutor prior to his disqualification, should result in the indictment being dismissed.[1]

At evidentiary hearings on the motion to quash, the following facts were developed. Prior to the March 5, 1986 indictment, Mr. Knotts, in both his capacity as an officer of Milestone Industries, Inc., and on a personal basis (for a divorce), had retained the legal services of O.C. Spaulding. Mr. Knotts frequently discussed Milestone's business affairs with Mr. Spaulding. At some point in 1983, Mr. Spaulding terminated his representation of Milestone, although prior to the termination he discussed with Mr. Knotts the circumstances which underlay at least one count of the indictment.

At the same time he represented Milestone, Mr. Spaulding served as an assistant prosecutor for Putnam County, a capacity in which he continued until he was elected prosecuting attorney in 1987. Although

---

1. The underlying indictment charges fifteen counts of embezzlement, alleging that Mr. Knotts embezzled various sums of money from Milestone Industries, Inc.

Mr. Spaulding could not recall such a meeting, Mr. Knotts contends that he consulted Mr. Spaulding on one occasion in 1984 about the facts on which many counts in the indictment are based.

The West Virginia State Police began an investigation of Mr. Knotts in 1985. Mr. Spaulding stated that when he became aware of the investigation, he instructed the investigating officer not to discuss with or disclose to him anything involving the investigation. Another assistant prosecutor, Michael Fewell, was assigned to the case by the then-prosecuting attorney, James Thompson. Mr. Spaulding stated that he informed Mr. Thompson that he had a potential conflict of interest and that Mr. Fewell was instructed not to discuss the investigation with him. Mr. Fewell then presented the indictment to the grand jury on March 5, 1986. The indictment was signed by Prosecutor Thompson.

After the indictment was returned, Mr. Knotts fled to California. When he was finally apprehended, Mr. Spaulding, who had since been elected prosecutor, informed the circuit court of his possible conflict of interest and requested that the court appoint a special prosecutor. The trial court granted the motion and appointed the relator, Rosa Juba–Plumley, by order entered December 13, 1990.

On January 25, 1991, Mr. Knotts presented a motion to quash the indictment at an evidentiary hearing before the circuit court. A second evidentiary hearing was held on May 15, 1991. The trial court denied the motion. The petitioners then filed their writ of prohibition in this Court.

■ Because Mr. Spaulding voluntarily disqualified himself from this case, we need not address any disqualification issue.[2] We must decide whether the facts that gave rise to his disqualification, which existed when the indictments were ob-

tained, are sufficient to vitiate the indictment. If Mr. Spaulding, who was then an assistant prosecuting attorney, had actually appeared before the grand jury and obtained the indictment, the indictment would unquestionably be invalid.

We discussed this point in *Farber v. Douglas*, 178 W.Va. 491, 361 S.E.2d 456 (1985), where the prosecutor was a defendant in a civil action brought by certain taxpayers. The suit also sought to remove members of the county commission because they had allegedly acted improperly in purchasing a building. The prosecutor had relocated his office to this building. In the course of the civil case, the taxpayers moved for appointment of a special prosecutor to investigate the regular prosecutor and filed an affidavit in support of the motion. Subsequently, the regular prosecutor had the taxpayers' attorney indicted for false swearing based on matters contained in his affidavit. The taxpayers' attorney then brought a petition for a writ of prohibition to preclude prosecution on the indictment.

After reviewing a number of cases, we concluded that the prosecutor was disqualified from handling the criminal case. We stated in Syllabus Point 2 of *Farber*: "It is generally held that a prosecutor is disqualified from acting in a criminal proceeding where he has a personal or pecuniary interest in the proceeding that conflicts with his duties as a public prosecutor."

We then proceeded to rule that the prosecutor's disqualification rendered the indictment void: "Since the prosecutor should have disqualified himself as a matter of law from seeking this indictment, his presence before the grand jury in this matter was unauthorized and vitiates the indictment." 178 W.Va. at 496, 361 S.E.2d at

---

**2.** In Syllabus Point 1 of *Nicholas v. Sammons*, 178 W.Va. 631, 363 S.E.2d 516 (1987), we made this general statement about prosecutorial disqualification:

   "Prosecutorial disqualification can be divided into two major categories. The first is where the prosecutor has had some attorney-client relationship with the parties involved whereby he obtained privileged information that may be adverse to the defendant's interest in regard to the pending criminal charges. A second category is where the prosecutor has some direct personal interest arising from animosity, a financial interest, kinship, or close friendship such that his objectivity and impartiality are called into question."

461. (Citations omitted). *See generally* Annot., 23 A.L.R.4th 397 (1983).

In the present case, Mr. Spaulding did not appear before the grand jury to procure the indictment. Nonetheless, the relators argue that the disqualification of one person in the prosecutor's office disqualifies the entire office. The relators cite Syllabus Point 1 of *Moore v. Starcher*, 167 W.Va. 848, 280 S.E.2d 693 (1981): "As a rule, the disqualification of a prosecuting attorney operates to disqualify his assistants." *Moore* is distinguishable because it involved disqualification at a criminal trial.

■ We emphasize again that the issue here is not the disqualification of the prosecuting attorney, but whether under the facts of this case, the indictments must be dismissed. This case is not like *Farber v. Douglas*, where a disqualified prosecutor obtained the indictments. The evidence demonstrates that Mr. Fewell, the assistant prosecutor, presented the case to the grand jury. Moreover, well before the indictments were obtained and shortly after the state police began their investigation, Mr. Spaulding had insulated himself from the investigation and the criminal proceedings.

The relators have not sought to show that Mr. Spaulding influenced the investigation or aided Assistant Prosecutor Fewell in securing the indictments. Moreover, they offer no evidence that the grand jurors were influenced by any of Mr. Spaulding's activities. We do not believe that such evidence, if it existed, would be impossible to obtain.

In two recent cases, improprieties before the grand jury were uncovered primarily through the grand jury's minutes. *See State ex rel. Starr v. Halbritter*, 183 W.Va. 350, 395 S.E.2d 773 (1990); *State ex rel. Pinson v. Maynard*, 181 W.Va. 662, 383 S.E.2d 844 (1989). Both of these cases cited *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), which detailed a num-

ber of irregularities before a grand jury as reflected in the grand jury record.

More fundamentally, *Bank of Nova Scotia* established two classes of grand jury errors or irregularities, which we recognized in *State ex rel. Starr v. Halbritter, supra*. The first category includes errors that are so fundamental that the procedural protections of the grand jury have been sufficiently eroded to render the proceedings fundamentally unfair:

"[There is a] class of cases in which indictments are dismissed, without a particular assessment of the prejudicial impact of the errors in each case, because the errors are deemed fundamental.... [T]hese cases are ones in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of ' prejudice." *Bank of Nova Scotia*, 487 U.S. at 256–57, 108 S.Ct. at 2375, 101 L.Ed.2d at 238. (Citations omitted).

To illustrate such fundamental errors, the Supreme Court in *Bank of Nova Scotia* cited *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), where there had been racial discrimination in the selection of grand jurors, and *Ballard v. United States*, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946), where women had been excluded from the grand jury. We held in *State ex rel. Starr v. Halbritter, supra*, that the grand jury's failure to vote as a body on the text of the indictment was a fundamental error that voided the indictment.[3]

We summarized *Bank of Nova Scotia*'s second class of grand jury errors in *Starr*, 183 W.Va. at 353, 395 S.E.2d at 776:

"In cases not involving such fundamental errors, the rule is that dismissal of an indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict or if there is grave doubt that

---

**3.** In *Starr,* the county prosecutor's common practice was that the grand jurors were not given a copy of the proposed indictment. Rather, they received a form on which they filled in the nature and date of the alleged crime, the name of the victim, a summary of the evidence, and the names of witnesses. From this form, the prosecutor later prepared an indictment which the foreperson of the grand jury signed, but which the grand jurors never saw.

the decision to indict was free from the substantial influence of such violations." (Citations omitted).

*State ex rel. Pinson v. Maynard, supra,* illustrates this sort of error. *Pinson* considered whether testimony of a key grand jury witness was so false and fraudulent that the indictment was properly dismissed with prejudice. We discussed, at some length, the dismissal of an indictment because of misleading or fraudulent testimony. We concluded that, in such a situation, dismissal with prejudice is not warranted, stating in Syllabus Point 5:

"When perjured or misleading testimony presented to a grand jury is discovered before trial and there is no evidence of prosecutorial misconduct, the State may withdraw the indictment without prejudice, or request the court to hold an *in camera* hearing to inspect the grand jury transcripts and determine if other sufficient evidence exists to support the indictment." [4]

Another illustration of nonfundamental error is found in *State v. Pickens,* 183 W.Va. 261, 395 S.E.2d 505 (1990), where we voided an indictment without prejudice because the grand jury minutes showed that the prosecutor had unduly influenced the grand jury. We outlined this area of the law in Syllabus Points 1 and 2:

"1. 'A prosecuting attorney can only appear before the grand jury to present by sworn witnesses evidence of alleged criminal offenses, and to render court supervised instructions, W.Va.Code § 7–4–1 (1976 Replacement Vol.); he is not permitted to influence the grand jury in reaching a decision, nor can he provide unsworn testimonial evidence.' Syllabus point 2, *State ex rel. Miller v. Smith,* 168 W.Va. 745, 285 S.E.2d 500 (1981).

"2. 'A prosecuting attorney who attempts to influence a grand jury by means other than the presentation of evidence or the giving of court supervised instructions, exceeds his lawful jurisdiction and usurps the judicial power of the circuit court and of the grand jury....' Part, syllabus point 3, *State ex rel. Miller v. Smith,* 168 W.Va. 745, 285 S.E.2d 500 (1981)."

In this case, the charged error is not fundamental. Furthermore, the claimed error does not relate to anything that occurred before the grand jury or that might have substantially influenced the grand jury's decision to indict. The petition rests upon the abstract proposition that because Mr. Spaulding as an assistant prosecutor was disqualified, the indictment obtained by another assistant should be dismissed.

We are not cited any authority for this proposition. We have found several cases which bear on this point. In *Daugherty v. State,* 466 N.E.2d 46 (Ind.App.1984), a sheriff who was under a criminal investigation talked with an assistant prosecutor about the investigation. Subsequently, the prosecutor procured an indictment against the sheriff. The sheriff claimed that his due process rights were violated and that the indictment should be dismissed. The trial court agreed, but on appeal this ruling was reversed. The appellate court concluded that there had been no exchange of any information between the assistant and the prosecutor that lead to the procurement of the indictment. *See also United States v. Mayo,* 646 F.2d 369 (9th Cir.), *cert. denied sub nom., Dondich v. United States,* 454 U.S. 1127, 102 S.Ct. 979, 71 L.Ed.2d 115 (1981); *Upton v. State,* 257 Ark. 424, 516 S.W.2d 904 (1974).

■ A prosecutor before the grand jury performs a limited role. The circuit judge instructs the grand jury on the elements of the various crimes that are presented to it. The prosecutor presents witnesses to establish probable cause that a crime was committed. He is not permitted to express his view on the credibility of such witnesses or on the guilt of the accused. Before the grand jury begins its deliberations, the prosecutor must leave the grand jury room. *See State ex rel. Starr v. Halbritter, supra; State v. Pickens, supra; Pinson v.*

---

**4.** Rule 6(b) of the West Virginia Rules of Criminal Procedure contains several grounds for challenges to the grand jury and for motions to dismiss an indictment. W.Va.Code, 52–2–1, *et seq.,* provides the statutory requirements for a grand jury.

*Maynard, supra; State v. Thompson,* 176 W.Va. 300, 342 S.E.2d 268 (1986).

We hold that an indictment should not be dismissed merely because an assistant prosecuting attorney was disqualified from participating in the case, when the disqualified attorney did not participate in the investigation of the case or its presentation to the grand jury, and there is no evidence that he influenced the procurement of the indictment.

Thus, we do not believe the Circuit Court of Putnam County abused its discretion in failing to dismiss the indictment. For the reasons stated herein, the writ of prohibition prayed for is denied, and the rule to show cause heretofore issued is dismissed.[5]

Writ denied.

---

**5.** The relators also assert that Mr. Spaulding's activities with this case after he became the elected prosecutor should be considered in dismissing the indictment. However, these activities antedated the 1986 indictment and did not influence its procurement or validity.