563 S.E.2d 820

**STATE of West Virginia, Plaintiff
Below, Appellee,**

v.

**Robin BARNHART, Defendant
Below, Appellant.**

No. 29967.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 16, 2002.

Filed April 8, 2002.

**156**

Darrell V. McGraw, Jr., Attorney General, Allen H. Loughry, II, Senior Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellee.

Jack Wood, Assistant Public Defender, Public Defender Corporation, Wheeling, West Virginia, Attorney for Appellant.

PER CURIAM.

This appeal arises from criminal proceedings in the Circuit Court of Ohio County. On January 11, 2000, an Ohio County grand jury indicted the appellant, Robin Barnhart, for the felony offense of malicious assault; a jury later convicted her of the lesser included offense of battery, a misdemeanor.

Ms. Barnhart claims that the circuit court erred in not dismissing the indictment because a member of the grand jury was a police officer who played some role in the investigation of the crime for which Ms. Barnhart was indicted, and, while not voting on the indictment, nevertheless remained in the grand jury room during the prosecuting attorney's presentment and during the deliberations of the grand jury. We agree and reverse her conviction.

I.

On November 1, 1999, a criminal complaint was filed against Ms. Barnhart and a warrant was issued for her arrest on November 15, 1999. Officer John Wroten, a member of the Wheeling police department, investigated certain aspects of the charges against Ms.

Barnhart.[1] Officer Wroten was also a member of the grand jury that on January 11, 2000, indicted Ms. Barnhart for malicious assault, a violation of *W.Va.Code*, 61–2–9(a) [1978].[2]

Before the beginning of Ms. Barnhart's jury trial, her counsel made a motion to dismiss the malicious wounding indictment based on Officer Wroten being a member of the grand jury. On March 22, 2000, the circuit court held a hearing to ascertain the details of Officer Wroten's participation in the presentment and deliberation of the indictment against Ms. Barnhart.

At that hearing, Officer Wroten testified that "the Prosecutor's Office, prior to the beginning of the Grand Jury session ... went in front of [the Judge] ... and asked [that] I be excused from any involvement. The Judge, for whatever reason unknown to me, didn't excuse me from it."

Officer Wroten also testified that during the presentation of the case against Ms. Barnhart to the grand jury, the testifying police officer identified Officer Wroten as having investigated the underlying case. According to Officer Wroten, when the testifying police officer mentioned Officer Wroten by name, a grand juror turned and looked at him questioningly. Officer Wroten testified that he responded by telling the grand jurors that they would have to "make your own decision and pretend I am not even here." Officer Wroten also testified that he did not otherwise actively participate in the presentation or deliberation of Ms. Barnhart's case, and that he did not vote on her indictment, but that he did remain in the room while the other grand jurors deliberated and voted.

At the close of Officer Wroten's testimony, the circuit court found that Officer Wroten did not intimidate or influence the other grand jurors, and denied the motion to dismiss the indictment.

Defense counsel properly preserved their objections to the indictment on the record.

Following a one-day trial, on March 23, 2000, a petit jury found Ms. Barnhart guilty of the lesser included offense of battery. *See* *W.Va.Code*, 61–2–9(c) [1978]. Ms. Barnhart now appeals her conviction and the indictment.

## II.

The grand jury has long held a central place in Anglo–American jurisprudence. In *Wood v. Georgia*, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962), Chief Justice Warren noted:

> Historically, this body [the grand jury] has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.[3]

*Id.*, 370 U.S. at 390, 82 S.Ct. at 1373, 8 L.Ed.2d at 580.

In *State ex rel. Pinson v. Maynard*, 181 W.Va. 662, 383 S.E.2d 844 (1989), this Court provided a brief history, function, and purpose of the grand jury in West Virginia:

1. The record is unclear as to the extent of Officer Wroten's participation in the investigation of the charges against Ms. Barnhart.

2. *W.Va.Code*, 61–2–9(a) [1978] states:
 If any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be guilty of a felony, and, upon conviction, shall be punished by confinement in the penitentiary not less than two nor more than ten years. If such act be done unlawfully, but not maliciously, with the intent aforesaid, the offender shall be guilty of a felony, and, upon conviction, shall, in the discretion of the court, either be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months and fined not exceeding five hundred dollars.

3. "The Grand Jury exists as an integral part of Anglo–American jurisprudence for the express purpose of assuring that persons will not be charged with crimes simply because of the zeal, malice, partiality or other prejudice of the prosecutor, the government or private persons." *United States v. DiGrazia*, 213 F.Supp. 232, 235 (N.D.Ill.1963).

The institution of the grand jury is deeply rooted in Anglo–American history. For centuries in England the grand jury served both as an accuser of people suspected of criminal wrongdoing and a protector of citizens from arbitrary governmental action. The grand jury continues this dual role to the present day, balancing the determination of probable cause that an offense has been committed against the duty to protect innocent citizens from unfounded criminal prosecution. Historically, the grand jury has been the sword of the government as well as the shield of the people, and this Court has on many occasions emphasized the importance of preserving this duality. For the indictments of a grand jury to be valid, the Fifth Amendment of the *United States Constitution* requires they be returned by a legally constituted and unbiased grand jury.

*Id.*, 181 W.Va. at 665, 383 S.E.2d at 847 (footnotes and internal citations omitted).

 The right to a grand jury is found in West Virginia's *Constitution*, which states that "[n]o person shall be held to answer for treason, felony or other crime, not cognizable by a justice, unless on presentment or indictment of a grand jury." *W.Va. Constitution*, Article III, § 4. "A defendant has a right under the Grand Jury Clause of Section 4 of Article III of the West Virginia Constitution to be tried only on felony offenses for which a grand jury has returned an indictment." Syllabus Point 1, *State v. Adams*, 193 W.Va. 277, 456 S.E.2d 4 (1995). In West Virginia, a valid presentment or indictment of a grand jury is "a condition precedent to a conviction for a felony." *State ex rel. McGilton v. Adams*, 143 W.Va. 325, 329, 102 S.E.2d 145, 147 (1958). *See also, Scott v. Harshbarger*, 116 W.Va. 300, 301, 180 S.E. 187, 187–88 (1935) ("[A] valid presentment or indictment of a grand jury is, in this state, a condition precedent to a conviction for a felony[.]"); Syllabus Point 5, *State v. McGraw*, 140 W.Va. 547, 85 S.E.2d 849 (1955) ("A valid indictment or presentment can be made only by a grand jury[.]").

 As a matter of public policy, an indictment will not be dismissed automatically simply because of alleged irregularities or because a member of the grand jury is disqualified. As we stated in Syllabus Point 4 of *State v. Bailey*, 159 W.Va. 167, 220 S.E.2d 432 (1975) (*overruled on other grounds, State ex rel. D.D.H. v. Dostert*, 165 W.Va. 448, 269 S.E.2d 401 (1980)), that under the provisions of *W.Va.Code*, 52-2-12 [1923], "an indictment will not be quashed or abated on the ground that one member of the grand jury is disqualified." "The curative provisions of this statute are based on reason and sound public policy. It would be detrimental to the public interest, if a large number of indictments should be liable to be quashed or abated because one grand juror was disqualified." *State v. Bailey*, 159 W.Va. at 174, 220 S.E.2d at 436 (citations omitted). However, in certain instances, fundamental fairness requires looking behind the indictment to achieve the purposes of the West Virginia *Constitution's* due process clause.

 Our state constitution guarantees that "[t]he courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay." *W.Va. Constitution*, Article III, § 17. Our Due Process Clause requires that the government must follow certain procedures before an individual of this State may be deprived of his or her liberty or property. "The Due Process Clause, Article III, Section 10 of the West Virginia Constitution, requires procedural safeguards against State action which affects a liberty or property interest." Syllabus Point 1, *Waite v. Civil Service Commission*, 161 W.Va. 154, 241 S.E.2d 164 (1977). Due process of law means "the due course of legal proceedings according to those rules and forms, which have been established for the protection of private rights, securing to every person a judicial trial before he can be deprived of life, liberty or property." Syllabus Pont 8, *Peerce v. Kitzmiller*, 19 W.Va. 564 (1882).

 In West Virginia, criminal defendants are entitled to a legally constituted and unbiased grand jury. The State "having once resorted to a grand jury procedure, [shall] furnish an unbiased grand jury."

*State v. Bailey*, 159 W.Va. at 174, 220 S.E.2d at 436–437. *See also, State ex rel. Pinson v. Maynard*, 181 W.Va. at 665, 383 S.E.2d at 847. In *State ex rel Starr v. Halbritter*, 183 W.Va. 350, 395 S.E.2d 773 (1990), this Court, quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 257, 108 S.Ct. 2369, 2375, 101 L.Ed.2d 228, 238 (1988) said that:

> [There is] a class of cases in which indictments are dismissed, without a particular assessment of the prejudicial impact of the errors in each case, because the errors are deemed fundamental. . . . [T]hese cases are ones in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the [irrebuttable] presumption of prejudice.

*State ex rel. Starr v. Halbritter*, 183 W.Va. at 353, 395 S.E.2d at 776. Flaws in grand jury procedures are included in this category of fundamental errors. See *Losh v. McKenzie*, 166 W.Va. 762, 769, 277 S.E.2d 606, 611 (1981) (discussing the different constitutional issues that can be raised during a habeas corpus proceeding).

■ The grand jury in West Virginia acts as both a sword and a shield protecting its citizens from an overreaching government. *State ex rel. Miller v. Smith*, 168 W.Va. 745, 752, 285 S.E.2d 500, 504 (1981). To have an investigating officer of one of the presentments that is being made to the grand jury sit on the grand jury inescapably raises the specter of unfair prejudice. As this Court stated in *State v. Frazier*, "[i]t cannot be expected that law enforcement officials who are directly involved with the solution of a crime and the prosecution of its perpetrators will maintain an impartial role." 162 W.Va. 602, 605, 252 S.E.2d 39, 42 (1979) (discussing the impropriety of a testifying police officer remaining in the grand jury room after he has finished testifying and participating in the grand jury proceedings by questioning other grand jury witnesses).

The State argues that Ms. Barnhart was not prejudiced because Officer Wroten did not vote on the indictment or actively participate in the grand jury's deliberations. The fact that Officer Wroten did not vote or participate in the indictment returned against Ms. Barnhart is in no way dispositive. The United States Supreme Court has recognized that "the fact that the alternate did not actively participate in deliberations is far from dispositive, as prejudice may arise 'either because the alternates actually participated in the deliberations, verbally or through 'body language'; or because the alternates' presence exerted a 'chilling' effect on the regular jurors.' *United States v. Olano*, 507 U.S. 725, 739, 113 S.Ct. 1770, 1780, 123 L.Ed.2d 508, 522 (1993) (citations omitted)." *State v. Brown*, 210 W.Va. 14, 30, 552 S.E.2d 390, 406 (2001) (McGraw, J., dissenting). There is no way for this Court to know what contact the other jurors may have had with Officer Wroten or whether he unconsciously "raised an eyebrow" or "made a frown during deliberations."[4] *State v. Brown*, 210 W.Va. at 29, 552 S.E.2d at 405 (discussing the presence of an alternate juror remaining in the room during petit jury deliberations) (Starcher, J., dissenting). Moreover, the inherent problems in trying to determine what actually occurs in a given jury room makes a "bright line" rule far more economical than a case-by-case analysis.

■ When a non-voting member of the grand jury is a police officer, the possibility of a "chilling effect" is necessarily heightened. In matters of constitutional significance, this Court "cannot discount the potential influence that one individual juror might have on the jury as a whole." *State v. Lightner*, 205 W.Va. 657, 665, 520 S.E.2d 654, 662 (1999) (McGraw, J., dissenting).

Further, this Court cannot discount the possibility that the other grand jurors may have felt influenced by having an investigating police officer remain in the room while they deliberated and voted. Grand juries' inner-workings are kept secret "to inspire the jurors with a confidence of security in the discharge of their responsible duties, so that they may deliberate and decide without apprehension of any detriment from an accused or any other person[.]" *State ex rel. Matko v. Ziegler*, 154 W.Va. 872, 880, 179 S.E.2d

---

4. This Court in no way intimates that Officer Wroten purposely did anything inappropriate or unseemly.

735, 740 (1971), *overruled on other grounds*, *Smoot v. Dingess*, 160 W.Va. 558, 236 S.E.2d 468 (1977). This confidence is compromised when a police officer, a very visible agent of the State, remains in the room during deliberations and voting.[5] His presence alone constitutes a form of communication.

■ In West Virginia, "[a]n appellate court is obligated to see that the guarantee of a fair trial under Section 10 of Article III of the West Virginia Constitution is honored. Thus, only where there is a high probability that an error of due process proportion did not contribute to the criminal conviction will an appellate court affirm. High probability requires that an appellate court possess a sure conviction that the error did not prejudice the defendant." Syllabus Point 11, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Based on the facts of the underlying case, this Court does not possess a "sure conviction" that Officer Wroten's presence on the grand jury did not unfairly prejudice Ms. Barnhart.

Ms. Barnhart was denied the right to have any indictment returned against her by a legally constituted and unbiased grand jury.[6] *See State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000); *State v. Garrett*, 195 W.Va. 630, 466 S.E.2d 481 (1995). The presence of a person other than a qualified juror for the case under consideration remaining in the grand jury room during deliberations, regardless of the participation of that unauthorized person, undermines the sanctity of the grand jury. The circuit court erred in not dismissing the indictment.

### III.

By permitting an investigating police officer to sit as a member of the grand jury that indicted Robin Barnhart, and by allowing the officer to remain in the grand jury room during the presentment of the indictment and during deliberations, Ms. Barnhart's due process rights were violated in such a way that the indictment should have been dismissed. Therefore, the petit jury's verdict against Robin Barnhart is reversed and this matter is remanded to the circuit court for entry of an order dismissing all charges resulting from the indictment in question.

Reversed and Remanded.

---

5. After presenting a case, the prosecuting attorney leaves so that the jurors may deliberate and vote in private. *State v. Wetzel*, 75 W.Va. 7, 14, 83 S.E. 68, 71 (1914) ("The law holds inviolate the secrecy of proceedings before the grand jury. No one is permitted to be present, when they are voting on an indictment, not even the prosecuting attorney, or the judge of the court, and no person, not a witness sworn and sent before them to give evidence, or the prosecuting attorney for the purpose of advising them upon questions of law only, is permitted to be present at any time while they are considering evidence.").

6. Ideally, Officer Wroten would have been excused from the grand jury before the grand jurors were given the oath. "The general rule is that a trial judge may in the exercise of sound discretion excuse a qualified juror before he is sworn for any reason personal to the juror which to the judge seems sufficient." Syllabus Point 1, *State v. Everly*, 150 W.Va. 423, 146 S.E.2d 705 (1966).