588 S.E.2d 647

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Yasser ABDELHAQ, Defendant Below, Appellant.**

No. 30736.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 26, 2003.

Decided April 16, 2003.

Davis, J., concurred and filed opinion, in which Maynard, J., concurred.

Michael E. Hooper, Esq., John L. Bremer, Esq., Wheeling, West Virginia, Attorneys for the Appellant.

Scott R. Smith, Esq., Prosecuting Attorney of Ohio County, Martin J. Wright, Jr., Esq., Assistant Prosecuting Attorney of Ohio County, Wheeling, West Virginia, Attorneys for the Appellee.

PER CURIAM:

This case is before this Court upon the appeal of Yasser Abdelhaq from his conviction by a jury in the Circuit Court of Ohio County, West Virginia, of murder of the first degree. Appellant Abdelhaq was charged with fatally stabbing his female companion, Dana Tozer, while the two were staying at the Hampton Inn in Wheeling, West Virginia. Pursuant to the final order of the Circuit Court entered on October 25, 2000, the appellant was sentenced to the penitentiary for life, without the possibility of parole.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. The issue upon which the parties and this Court have focused concerns the fact that the grand jury which returned the indictment against the appellant included, as a member, a police detective who, along with other law enforcement officers, investigated this case and gathered evidence concerning the homicide. In *State v. Barnhart*, 211 W.Va. 155, 563 S.E.2d 820 (2002), a case involving this same grand jury, this Court held that an indictment for malicious assault should have been dismissed where this same police detective was a member of the grand jury and had investigated the charges against the defendant.

For the reasons stated below, this Court concludes that *Barnhart* is dispositive of this appeal and warrants the dismissal of the indictment returned against appellant Abdelhaq. Accordingly, the Circuit Court's entry of judgement upon the appellant's conviction by a jury of murder of the first degree is reversed, and this case is remanded to the Circuit Court for the entry of an order dismissing the indictment.

I.

FACTS

In November 1999, appellant Abdelhaq and his female companion, Dana Tozer, were vacationing in the Wheeling, West Virginia, area. They were from Cleveland, Ohio. Ms. Tozer had been in an automobile accident in June 1995 and was paralyzed from the waist down. As subsequently brought out at trial, the appellant suffered from various mental problems, including a form of psychosis caused by long-term drug abuse. One of the drugs the appellant frequently abused was cocaine. The record does not show any history of violence between the appellant and Ms. Tozer.

On November 7, 1999, the couple checked in for two nights at the Hampton Inn in Wheeling. They were given a room on the first floor. On November 9, 1999, some two hours past the noon check-out time, the hotel staff attempted to communicate with the appellant and Ms. Tozer by knocking on their door and by calling from the front desk. There was no response. After trying to gain entry to the room with a pass-key and deter-

mining that the room had been barricaded from the inside, the hotel staff called the Wheeling Police Department.

The police were initially unsuccessful in getting a response from the room. Later, the police, and appellant Abdelhaq's brother who had arrived on the scene, heard the appellant say that he would come to the door. The appellant, who was mumbling at that time, also indicated that Ms. Tozer was going to take a shower. Earlier that morning, appellant Abdelhaq had stated to his brother, by telephone, that he was going to commit suicide. At no time during the afternoon of November 9 did Ms. Tozer respond to attempts to communicate with the couple. Nor did the appellant come to the door as promised. Finally, approximately forty-nine minutes after their arrival, the police made a forced, warrantless entry into the room. The appellant then grabbed a knife and a plate of what appeared to be cocaine. The police disarmed him and placed him in handcuffs. Soon after, the body of Dana Tozer was discovered on the floor of the bathroom. As the medical examiner later testified, Ms. Tozer was dead as the result of 233 knife wounds. Substances which appeared to be cocaine and marihuana were found at the scene. The appellant was taken into custody, transported to a local medical facility, and subsequently transferred to the Northern Regional Jail in Moundsville, West Virginia.

Police Detective John Wroten of the Wheeling Police Department was one of the officers who secured the scene and collected evidence concerning Ms. Tozer's death. Specifically, the record indicates that Detective Wroten: (1) helped move the handcuffed appellant from the room to a group of paramedics who were waiting in the hotel corridor, (2) located several items in the room which were taken as evidence, including a brass pipe used for smoking and a baggie containing what appeared to be marihuana and (3) completed a number of written "evidence forms" which constituted part of the chain of custody with regard to the items found. In addition, Detective Wroten, the following day, participated in the search of the vehicle which had been driven by appellant Abdelhaq and Ms. Tozer to the Hampton Inn. One of the items

seized from the vehicle was a disposable camera. In a written report to the Wheeling Police Department, Detective Wroten stated that the camera "may shed some light on the activities of the suspect and victim" prior to the homicide.

## II.

### THE PROCEEDINGS BELOW

On January 11, 2000, an Ohio County grand jury returned an indictment against appellant Abdelhaq charging him with the murder of Dana Tozer. *W.Va.Code*, 61–2–1 (1991). It is undisputed that Police Detective Wroten was a member of that grand jury.

Following the return of the indictment, the appellant gave notice that he would rely upon the defense of insanity. *W.Va. R.Crim. P.* 12.2. Also during this period of time, the Circuit Court denied the appellant's motion to suppress the evidence seized during the forced, warrantless entry of the Hampton Inn room on November 9, 1999. The Circuit Court concluded, *inter alia*, that the police acted reasonably under the circumstances in entering the room, based upon the "emergency doctrine" exception to the warrant requirement. *See, State v. Cecil*, 173 W.Va. 27, 311 S.E.2d 144 (1983), applying the "emergency doctrine" where the police were attempting to locate an injured or deceased child in a mobile home. Here, the Circuit Court found that, at the time of the warrantless entry, the officers of the Wheeling Police Department were primarily concerned for the safety of the appellant and Ms. Tozer.

Trial began in Circuit Court on August 25, 2000. The State called a number of witnesses during its case-in-chief concerning the events of November 9, 1999. One such witness was Police Detective Wroten who indicated to the jury that he went to the scene at the Hampton Inn and was among the officers who collected evidence concerning the homicide.

During his testimony, Detective Wroten stated that, in his 15 years of service as a police officer, he had never previously seen a case involving in excess of 200 knife wounds. Moreover, Detective Wroten stated that the

amount of blood observed in the bathroom, where the body of Ms. Tozer was found, seemed less than expected in view of those wounds. On the latter point, Detective Wroten indicated that much of the blood could have been cleaned up or that Ms. Tozer could have been killed in the bathtub.

Appellant Abdelhaq did not testify at trial and did not dispute the State's evidence tending to establish that he killed Ms. Tozer. Instead, he called a number of witnesses in support of his defense of insanity and in support of his additional defense of diminished capacity. Specifically, Dr. Charles Hewitt, a psychologist, and Dr. Robert Wettstein, a psychiatrist, indicated that, at the time of the homicide, appellant Abdelhaq was suffering from a form of psychosis caused by long-term drug abuse and from paranoia with hallucinations. Therefore, the appellant was not criminally responsible for the death of Ms. Tozer even if he had also ingested illegal substances at the time of the homicide. Moreover, according to Dr. Hewitt and Dr. Wettstein, the appellant's psychosis and paranoia, plus his probable ingestion of illegal substances immediately before the homicide, rendered the appellant incapable of forming an intent to kill Ms. Tozer.

The State, on the other hand, called Dr. Fred Krieg, a psychologist, and Dr. Patricia Williams, a psychiatrist, who testified that, his pre-existing mental problems notwithstanding, the appellant was capable of knowing right from wrong; yet he killed Ms. Tozer after voluntarily becoming intoxicated upon illegal substances. In any event, according to the State, the evidence at trial concerning insanity and diminished capacity was sufficiently in conflict to allow those issues to be submitted to the jury.

At the conclusion of the trial, the jury found appellant Abdelhaq guilty of murder of the first degree, without a recommendation of mercy. Thereafter, the Circuit Court denied the appellant's post-trial motions, entered judgment upon the jury's verdict and sentenced the appellant to life imprisonment, without the possibility of parole.

## III.

### DISCUSSION

As stated above, *State v. Barnhart*, 211 W.Va. 155, 563 S.E.2d 820 (2002), involved the same grand jury and the same police officer as in this case. In *Barnhart*, the defendant was indicted for malicious assault. The members of the grand jury included Police Detective Wroten who had investigated the incident. Although Detective Wroten did not actually vote on the indictment, he remained in the grand jury room during the prosecuting attorney's presentment and during grand jury deliberations. The defendant was subsequently convicted of the lesser included offense of battery. Upon appeal, this Court reversed the conviction and stated as follows:

By permitting an investigating police officer to sit as a member of the grand jury that indicted Robin Barnhart, and by allowing the officer to remain in the grand jury room during the presentment of the indictment and during deliberations, Ms. Barnhart's due process rights were violated in such a way that the indictment should have been dismissed.

211 W.Va. at 160, 563 S.E.2d at 825.

In so holding, this Court, in *Barnhart*, recognized the provisions of *W.Va.Code*, 52-2-12 (1923), which state that "[n]o presentment or indictment shall be quashed or abated on account of the incompetency or disqualification of any one or more of the grand jurors who found the same." *See also, W.Va. R.Crim. P.* 6(b)(2). In fact, there was nothing in the record, in *Barnhart*, to suggest that Detective Wroten had done anything to influence the other members of the grand jury. Nevertheless, this Court made it clear that, in certain instances, due process requires looking behind the indictment where "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair [.]" 211 W.Va. at 158–59, 563 S.E.2d at 823–24. More generally, syllabus points 2 and 3 of *Barnhart* state:

2. "The Due Process Clause, Article III, Section 10 of the West Virginia Constitution requires procedural safeguards

against State action which affects a liberty or property interest." Syllabus point 1, *Waite v. Civil Service Commission*, 161 W.Va. 154, 241 S.E.2d 164 (1977).

3. "An appellate court is obligated to see that the guarantee of a fair trial under Section 10 of Article III of the West Virginia Constitution is honored. Thus, only where there is a high probability that an error of due process proportion did not contribute to the criminal conviction will an appellate court affirm. High probability requires that an appellate court possess a sure conviction that the error did not prejudice the defendant." Syllabus point 11, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

As the *Barnhart* opinion concludes:

To have an investigating officer of one of the presentments that is being made to the grand jury sit on the grand jury inescapably raises the specter of unfair prejudice. * * * The fact that Officer Wroten did not vote or participate in the indictment returned against Ms. Barnhart is in no way dispositive. * * * [T]his Court cannot discount the possibility that the other grand jurors may have felt influenced by having an investigating police officer remain in the room while they deliberated and voted. * * * Ms. Barnhart was denied the right to have any indictment returned against her by a legally constituted and unbiased grand jury.

211 W.Va. at 159–60, 563 S.E.2d at 824–25. *Cf, Deardorf v. State*, 477 N.E.2d 934 (Ind. Ct.App.1985), holding that an investigating officer remaining in the grand jury room after testifying as a *witness* did not warrant the dismissal of the indictment.

■ In the case before this Court, however, the State emphasizes that, unlike the defendant's counsel in *Barnhart*, appellant Abdelhaq's counsel failed to raise the issue concerning Detective Wroten prior to trial. Therefore, the State contends, the issue concerning Wroten's membership on the grand jury was waived: (1) since the appellant's counsel knew about the problem concerning Detective Wroten long before trial began and (2) since *W.Va. R.Crim. P.* 12(b)(2) provides that defenses and objections based upon de-

fects in the indictment must be raised prior to trial. *See also, W.Va. R.Crim. P.* 6(b)(1). Nevertheless, the State's assertion of waiver is unconvincing in the circumstances of this case.

First, as confirmed in *Barnhart*, the prosecutor asked the Circuit Court to excuse Detective Wroten from service on the grand jury. The record herein does not contain the comments of the Circuit Court concerning that request, but, in any event, Detective Wroten was not excused. Moreover, on March 17, 2000, prior to trial, counsel for appellant Abdelhaq filed a motion to obtain the transcript and minutes of the grand jury proceedings. That motion stated, in part, that, to the best of the appellant's knowledge, "John Wroten, a police officer for the said Wheeling Police Department, who was present at the scene of the purported crime at issue herein and who was actively involved in the investigation of the said crime scene, was also a member of the grand jury which indicted the [appellant.]" On March 31, 2000, the Circuit Court granted the appellant's motion. The record before this Court, however, contains only a transcript of the testimony presented to the grand jury. Thus, as indicated by counsel during oral argument before this Court, it is not certain, based upon the documents before us, whether Detective Wroten was a voting or a non-voting member of the grand jury as to the indictment returned against the appellant. *See, W.Va. R.Crim. P.* 6(c), concerning the keeping of a record of the number of grand jurors concurring in every indictment. In any event, the record shows that, at least to some degree, counsel for appellant Abdelhaq pursued the issue of Detective Wroten's membership on the grand jury with regard to the indictment of the appellant. Under those circumstances, where both the prosecutor and counsel for the appellant raised the issue prior to trial, this Court is of the opinion that the issue of Detective Wroten's participation on the grand jury was not waived.

■ While this Court does not seek to undermine the curative import of *W.Va.Code*, 52–2–12 (1923), concerning the disqualification of a grand juror, the outcome of this

case is inexorably guided by the reasoning and holding of *Barnhart*. As stated in appellant Abdelhaq's brief: "The facts involving the appellant are materially no different from those in *Barnhart*, and the constitutional violations are the same." In this case, Police Detective Wroten was one of the officers who secured the scene and collected evidence from the hotel room concerning Ms. Tozer's death. In addition, he participated in the search of the vehicle the appellant and Ms. Tozer had driven. Thereafter, Detective Wroten became a member of the grand jury which returned the indictment and, later, was called by the State as a witness at trial. Accordingly, Detective Wroten's membership on the grand jury fell squarely between two of his duties as a police officer concerning Ms. Tozer's death, i.e., to investigate the homicide and to testify along with other police officers at trial.

As in *Barnhart*, this Court is of the opinion that Detective Wroten's membership on the grand jury so compromised that entity that the process was rendered fundamentally unfair. Thus, a dismissal of the indictment was warranted under the principles of due process, the curative language of *W.Va.Code*, 52–2–12 (1923), notwithstanding. *See, Bowman v. Leverette*, 169 W.Va. 589, 597, n. 4, 289 S.E.2d 435, 440, n. 4 (1982), citing authority to the effect that due process "varies with the subject-matter and the necessities of the situation." Here, as in *Barnhart*, the presence of an investigating police officer as a member of the grand jury undermined the validity of the trial and the appellant's conviction.

In so concluding, this Court in no way suggests that Police Detective Wroten did anything improper before the grand jury to influence the return of the indictment. Nor does this opinion constitute any limitation on the right of law enforcement officers to participate as citizens in our democratic institutions, including service in court-related matters. Police officers are indispensable to the maintenance of our free society and should be able to enjoy the benefits thereof. In this particular case, however, Detective Wroten should have been excused from grand jury service.

## IV

## CONCLUSION

Upon all of the above, the entry of judgment by the Circuit Court of Ohio County upon the appellant's conviction of murder of the first degree is reversed, and this case is remanded to the Circuit Court for the entry of an order dismissing the indictment.

■ Although the result herein is mandated by principles of constitutional law, appellant Abdelhaq will, no doubt, be reindicted in Ohio County concerning the death of Ms. Tozer. In that regard, this Court notes the language of *State v. Pietranton*, 140 W.Va. 444, 84 S.E.2d 774 (1954), stating that a plea of former jeopardy is insufficient "where based on a former trial under a fatally defective indictment." 140 W.Va. at 449, 84 S.E.2d at 780. *See also, State v. Gibson*, 181 W.Va. 747, 750, 384 S.E.2d 358, 361 (1989), and *Brooks v. Boles*, 151 W.Va. 576, 583, 153 S.E.2d 526, 530 (1967), indicating that one of the requirements for the attachment of jeopardy is that the accused be placed on trial upon a "valid" indictment.

Reversed and remanded.

Chief Justice STARCHER and Justice DAVIS concur and reserve the right to file concurring opinions.

DAVIS, Justice, concurring:

Yasser Abdelhaq argued that his conviction for first-degree murder should be reversed and that the indictment should be dismissed because an investigating police officer was a member of the grand jury that indicted him. The majority opinion concluded that, under our recent decision in *State v. Barnhart*, 211 W.Va. 155, 563 S.E.2d 820 (2002), the conviction had to be reversed and the indictment dismissed without prejudice. While I believe it is a close call as to the preservation of this issue for appeal purposes, I concur in the majority's disposition of that issue.

I am compelled to write separately because the majority opinion failed to address another assignment of error. That assignment of error involved the denial of Mr. Abdelhaq's pretrial motion to suppress evidence seized at the hotel room where the murder took place. It was imperative that the majority opinion address this issue as this matter will undoubtedly resurface during the retrial of this matter. *See State v. Ladd,* 210 W.Va. 413, 431, 557 S.E.2d 820, 838 (2001) ("Due to the possibility of retrial upon remand, we find it necessary to address some of the other assignments of error alleged by the defendant in order to provide guidance to the trial court upon remand."); *State v. Stacy,* 181 W.Va. 736, 743, 384 S.E.2d 347, 354 (1989) ("We reverse based on the defendant's primary assignment of error regarding the insufficiency of jury instructions given at trial. We address the next assignment of error in order to give guidance to the trial court upon retrial."); *State v. Adkins,* 170 W.Va. 46, 48, 289 S.E.2d 720, 722 (1982) ("We find it necessary to reverse the judgment of the Circuit Court of Lincoln County on the basis of one of the errors assigned and address other errors assigned on this appeal that may recur at any possible retrial of the defendant."). As I will demonstrate below, the evidence seized from the hotel room was lawfully seized.

### Possession and Control of the Hotel Room

Mr. Abdelhaq argued in his brief that items seized from the hotel room in which he was staying should not have been introduced into evidence because he did not consent to the entry or search thereof by the police. We have recognized that, "[a]s a general rule, a warrantless search of an individual's home is constitutionally prohibited." *State v. Flippo,* 212 W.Va. 560, 567 n.7, 575 S.E.2d

170, 177 n. 7 (2002) (citing *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290, 298–99 (1978); *State v. Peacher,* 167 W.Va. 540, 562, 280 S.E.2d 559, 574–75 (1981)). Our cases have also pointed out that "[t]his prohibition has been extended to a rented room occupied as a temporary residence by a person." *Flippo,* 212 W.Va. at 567 n. 7, 575 S.E.2d at 177 n. 7 (citing *Stoner v. California,* 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856, 861 (1964)); *State v. Buzzard,* 194 W.Va. 544, 549, 461 S.E.2d 50, 55 (1995)). Consequently, during the time of Mr. Abdelhaq's lawful stay at the hotel room, he had a constitutionally recognized expectation of privacy that required a search warrant for entry by the police.[1]

Mr. Abdelhaq also contends that the circuit court was wrong in ruling that the "emergency exception" to the warrant requirement permitted the police to enter and search the room. This Court adopted the emergency exception doctrine in *State v. Cecil,* 173 W.Va. 27, 311 S.E.2d 144 (1983). In *Cecil,* we held that the emergency exception doctrine permitted

> a limited, warrantless search or entry of an area by police officers where (1) there is an immediate need for their assistance in the protection of human life, (2) the search or entry by the officers is motivated by an emergency, rather than by an intent to arrest or secure evidence, and (3) there is a reasonable connection between the emergency and the area in question.

*Cecil,* 173 W.Va. at 32, 311 S.E.2d at 149 (citation omitted). Assuming that the emergency exception doctrine was not applicable or that the police exceeded the scope of the search permitted by the emergency exception doctrine, I believe another exception to

---

1. The State argued in its brief that the hotel room Mr. Abdelhaq stayed at was rented by the victim. Consequently, Mr. Abdelhaq did not have a constitutionally recognized expectation of privacy. I disagree. Courts that have addressed the issue have uniformly held that an overnight guest in a hotel room rented by another has a reasonable expectation of privacy protected by the Fourth Amendment of the United States Constitution. *See United States v. Gordon,* 168 F.3d 1222, 1226 (10th Cir.1999) (finding that either

registered occupant of hotel room or overnight guest of registered occupant has standing to object to search); *United States v. Wilson,* 36 F.3d 1298, 1303 (5th Cir.1994) (recognizing that overnight guest of hotel resident had standing to object to search of hotel room); *Johnson v. Nagle,* 58 F.Supp.2d 1303, 1379 (N.D.Ala.1999) (same): *People v. Olson,* 198 Ill.App.3d 675, 144 Ill.Dec. 806, 556 N.E.2d 273, 277 (1990) (same); *People v. Ali,* 131 A.D.2d 857, 517 N.Y.S.2d 216, 218 (1987) (same).

the warrant requirement allowed the search and seizure.

The decisions of this Court have recognized that consent is one of the exceptions to the warrant requirement. This Court has stated that

" '[t]he general rule is that the voluntary consent of a person who owns or controls premises to a search of such premises is sufficient to authorize such search without a search warrant, and that a search of such premises, without a warrant, when consented to, does not violate the constitutional prohibition against unreasonable searches and seizures." ' Syl. pt. 8, *State v. Plantz*, 155 W.Va. 24, 180 S.E.2d 614 (1971), *overruled in part on other grounds by State ex rel. White v. Mohn*, 168 W.Va. 211, 283 S.E.2d 914 (1981).

Syl. pt. 1, *State v. Buzzard*, 194 W.Va. 544, 461 S.E.2d 50 (1995)).

Mr. Abdelhaq did not give the police permission to enter the hotel room in which he had stayed. At the time of the police entry, the check-out time had passed. Indeed, before the police arrived at the hotel, employees of the hotel attempted to gain access to the room with a pass key, but the door was barricaded. Other efforts to gain access to the room failed, including attempts to call the room by the hotel management. It was only after the hotel management was unable to gain entry into the room that police officers were summoned. When the police arrived at the hotel, they were given permission by hotel management to enter the room. The police proceeded to cut the chain to the door and enter the room. There they found the body of the victim.

The critical points from the above abbreviated facts are that (1) Mr. Abdelhaq was in the hotel room after check-out time and (2) hotel management gave the police permission to enter the room. Under this set of facts, the general rule is that

when the term of a guest's occupancy of a room expires, the guest loses his exclusive right to privacy in the room. The manager of a motel [or hotel] then has the right to enter the room and may consent to search of the room and the seizure of the items there found.

*United States v. Parizo*, 514 F.2d 52, 54 (2d Cir.1975). *See also United States v. Kitchens*, 114 F.3d 29, 31 (4th Cir.1997) ("Generally, a guest does not have a reasonable expectation of privacy in his hotel room after his rental period has terminated."); *United States v. Huffhines*, 967 F.2d 314, 318 (9th Cir.1992) ("A guest in a motel has no reasonable expectation of privacy in a room after the rental period has expired."); *United States v. Rahme*, 813 F.2d 31, 34 (2d Cir. 1987) ("[W]hen a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or in any articles therein of which the hotel lawfully takes possession ... once the guest's access to the room is no longer his 'exclusive right,' he has no legitimate expectation of privacy in the room even though he himself still has access."); *State v. Weekley*, 200 Ariz. 421, 27 P.3d 325, 331 (Ct.App.2001) ("Upon the expiration of the rental period; a hotel guest no longer has a right to use the room and loses any privacy interest associated with it."); *Norwood v. State*, 670 N.E.2d 32, 35 (Ind.Ct. App.1996) ("Hotel guests enjoy the same constitutional protection against unreasonable search and seizure as do occupants of private residences. However, the expectation of privacy ends when the rental period expires and 'Fourth Amendment protection of a motel or hotel room ends at the conclusion of the rental period.' "(quoting *Myers v. State*, 454 N.E.2d 861 (Ind.1983)); *Commonwealth v. Brass*, 42 Mass.App.Ct. 88, 674 N.E.2d 1326, 1327–28 (1997) ("[T]he generally accepted rule [is] that a person who stays over in a hotel or motel room 'after his rental period has terminated' has lost any reasonable expectation of privacy in the room that he may once have had." (quoting *Commonwealth v. Paszko*, 391 Mass. 164, 461 N.E.2d 222, 235 (1984)) (internal quotations and citation omitted)); *State v. Mitchell*, 20 S.W.3d 546, 561 (Mo.Ct.App.2000) ("We conclude that, in the absence of payment for continued rental of the room, or of permission to stay in the

room more than the time reasonably considered a 'late check-out,' Defendant lost his privacy interest in the room when the motel took back possession of the room to clean it."); *State v. Taggart*, 14 Or.App. 408, 512 P.2d 1359, 1364 (1973) ("Whatever subjective expectation of privacy defendant may have had was not objectively reasonable under these circumstances. The search of defendant's motel room ... was lawful, based on the consent of the motel management.").[2] "Moreover, even if the party giving consent does not have actual authority to consent, 'apparent authority' may be sufficient, if the circumstances would lead a reasonable officer to conclude that the person providing consent had the requisite authority to do so." *Bryant v. Commonwealth*, 39 Va.App. 465, 573 S.E.2d 332, 335 (2002) (citations omitted); *State v. Loya*, 18 P.3d 1116, 1119 (Utah Ct.App.2001) ("A hotel guest's expectation of privacy ... is not unlimited, but normally ends upon the termination of the rental period.");

In view of the great weight of authorities addressing the issue, it is clear that after the check-out time expired, Mr. Abdelhaq lost all expectation of his constitutionally protected privacy in the hotel room. Thus, hotel management had the right to consent to the police entering and searching the room. Consequently, entry into the room and seizure of evidence by the police was lawful.

Therefore, I concur in the majority's decision in this case. I am authorized to state that Justice Maynard joins me in this concurring opinion.

---

**2.** The recognized exception to the loss of privacy expectation in a rented room, after check-out time, is when "the motel has accepted late payment and/or tolerated overtime stays in the past." *State v. Davis*, 86 Wash.App. 414, 937 P.2d 1110, 1113 (1997) (citations omitted). In the instant case, there was no evidence introduced to trigger application of this exception.