# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Yasser Abdelhaq,**
**Petitioner Below, Petitioner,**

**vs.) No. 17-0078** (Ohio County 06-C-93)

**Ralph Terry, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Yasser Abdelhaq, by counsel Kevin L. Neiswonger, appeals the Circuit Court of Ohio County's December 29, 2016, order denying his petition for writ of habeas corpus. Respondent Ralph Terry[1], Superintendent, Mt. Olive Correctional Complex, by counsel Gordon L. Mowen II, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying habeas relief because he received ineffective assistance of counsel.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2000, petitioner was indicted on one count of first-degree murder for the stabbing death of Dana Tozar ("the victim"). Following an August of 2000 jury trial, petitioner was convicted of first-degree murder and sentenced to a term of incarceration of life, without mercy. Petitioner appealed his conviction, and this Court thereafter vacated the conviction and remanded the matter for a new trial. *See State v. Abdelhaq*, 214 W.Va. 269, 588 S.E.2d 647 (2003).

Thereafter, petitioner was indicted for a second time on one count of first-degree murder and was represented by attorneys Robert G. McCoid and John J. Pizzuti. During his bifurcated

---

[1]Effective July 1, 2018, the positions formerly designated as "wardens" are now designated "superintendents." *See* W.Va. Code § 15A-5-3. Moreover, petitioner originally listed David Ballard as respondent in this action. Mr. Ballard is no longer the superintendent at Mt. Olive Correctional Complex. Accordingly, the appropriate public officer has been substituted pursuant to Rule 41 of the West Virginia Rules of Appellate Procedure.

trial, petitioner's defense was that he could not have deliberately and intentionally killed the victim because he was in a psychotic state due to drug use. As such, petitioner sought a conviction on the lesser-included offense of second-degree murder. At the conclusion of his second jury trial, petitioner was again convicted of first-degree murder. Ultimately, the jury did not recommend mercy, and petitioner was sentenced to a term of incarceration of life, without mercy. Following this conviction, petitioner's second appeal to this Court was refused by order entered in May of 2005.

In 2006, petitioner initiated habeas corpus proceedings. Following a summary denial of his petition for writ of habeas corpus, this Court granted petitioner relief and ordered the matter remanded for the holding of an omnibus hearing on the limited issue of ineffective assistance of trial counsel.

In August of 2016, the circuit court held an omnibus hearing. During the hearing, Mr. McCoid testified extensively to the trial strategy and tactics employed, as well as to specific instances wherein he opted not to object to certain statements from the prosecution that petitioner alleged constituted prosecutorial misconduct. Mr. McCoid further testified unequivocally that petitioner understood "the full ramifications" of the trial strategy to admit guilt and ask for a conviction of second-degree murder and gave his consent. At several points during his testimony, Mr. McCoid addressed discussions the attorneys had with petitioner concerning the trial strategy, petitioner's understanding of the risks and benefits of such a strategy, and his consent to pursuing it. Having the benefit of seeing the State's theory of the case during the first trial, Mr. McCoid testified that they reevaluated the trial strategy since this "was not a case about whether [petitioner] had taken [the victim's] life," but was rather "about what his mental status was at the time that he did so." Mr. McCoid cited to portions of his opening statement in the case where he admitted that petitioner's guilt was not in question but urged the jury to convict him of second-degree murder due to the absence of premeditation. Based on the opening, Mr. McCoid indicated that

> [i]t is inconceivable that I would have given an opening statement in a first-degree murder case asking the jury to convict my client of second-degree murder without hav[ing] closely consulted with my client, discussed the minutia associated with that decision and obtained the full consent of my client in . . . advancing that defense.

Next, petitioner testified and admitted to killing the victim by stabbing her 235 times. He further agreed that he would have been "thrilled" with a verdict of life, with mercy, or second-degree murder. Petitioner testified that he did not agree with the strategy to ask for a conviction of second-degree murder, however. And while he was willing to take responsibility for the victim's murder, petitioner indicated the he "did not premediate" the act. Ultimately, by order entered on December 29, 2016, the circuit court denied petitioner habeas relief. It is from this order that petitioner appeals.

Our review of the circuit court's order denying petitioner's petition for a writ of habeas corpus is governed by the following standard:

"In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

On appeal, petitioner asserts three assignments of error, all of which involve allegations of ineffective assistance of trial counsel. First, petitioner argues that counsel failed to object to the following three instances of prosecutorial misconduct: (1) the prosecuting attorney's misstatement of the law concerning premeditation, wherein the prosecutor told the jury "don't forget the instructions. How long does it take to premeditate and deliberate? An instant"; (2) the prosecutor's personal opinion regarding the credibility of an expert witness; and (3) the prosecutor's inappropriate mention of mercy, including an instance wherein the prosecutor said that "[petitioner's] mercy is that he gets to live. People worked to save his life at that hospital. He gets to live, and [the victim] is dead." Second, petitioner argues that counsel was ineffective for failing to object to what he alleges was an improper jury instruction on the inference of malice and the intent to kill. Finally, petitioner alleges that counsel was ineffective for failing to obtain his consent to pursue a defense strategy of admitting culpability but challenging the requisite intent to support a first-degree murder conviction. However, our review of the record supports the circuit court's decision to deny petitioner's petition for writ of habeas corpus as to each of petitioner's assignments of error. Petitioner's arguments presented herein, with the exception of his assertion that the circuit court failed to substantively address his third assignment of error, were thoroughly addressed by the circuit court in its order denying petitioner habeas relief.

As to petitioner's third assignment of error asserting that his counsel was ineffective for pursuing a trial strategy to which he did not consent, we find no error. This Court has held that

[i]n the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). Further,

[i]n reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Id*. at 6-7, 459 S.E.2d at 117-18, Syl. Pt. 6. Finally, "[w]here a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syl. Pt. 21, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974).

Here, we find that petitioner is entitled to no relief in regard to his third assignment of error, because he cannot show that no reasonably qualified defense attorney would have pursued the strategy that trial counsel did herein. Further, petitioner's argument in support of this assignment of error lacks any basis in the record. Aside from his unsupported claims that he never agreed to the strategy to admit culpability and seek a second-degree murder conviction, the evidence obtained at the omnibus hearing overwhelmingly establishes that petitioner's trial counsel advanced this strategy with petitioner's consent and support.

Specifically, Mr. McCoid testified that petitioner and trial counsel spoke about the trial strategy at length, even going so far as to author a letter together in advance of trial seeking a plea agreement to second-degree murder on the basis that petitioner admitted to killing the victim but without the intent necessary to be guilty of first-degree murder. While the record shows that counsel instructed petitioner to author this letter in the hope that it could be used to mitigate against a sentence of life, without mercy, in the event of a first-degree murder conviction, the fact remains that it is indicative of petitioner's agreement to pursue an overall strategy to obtain a conviction on a lesser-included offense or otherwise lessen the subsequent term of incarceration imposed. Further, counsel testified at length about the discussions he had with petitioner concerning the trial strategy, in addition to petitioner's understanding of that strategy, its attendant risks and benefits, and his ultimate consent to the strategy. As such, this issue was one of credibility for the circuit court to make. *See State v. Guthrie*, 194 W.Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."). Given that the circuit court denied petitioner relief on this ground, it is clear that it did not find his testimony that he did not agree to this trial strategy to be credible. This is especially true in light of petitioner's testimony at the omnibus hearing that he would have been "thrilled" with a conviction of either second-degree murder or a sentence of life, with mercy. Given that petitioner specifically acknowledged his desire to be sentenced to something less that life, without mercy, it is clear that he supported trial counsel's strategy to obtain such a result. Accordingly, we find no error.

The circuit court's order includes well-reasoned findings and conclusions as to the assignments of error now raised on appeal. Because we find no clear error or abuse of discretion in the circuit court's order or record before us, we hereby adopt and incorporate the circuit court's findings and conclusions as they relate to petitioner's assignments of error raised on appeal and direct the Clerk to attach a copy of the circuit court's December 29, 2016, "Order" to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  November 21, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

# IN THE CIRCUIT COURT OF OHIO COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA *ex rel.*
YASSER ABDELHAQ,

               Petitioner,

v.

                                         CASE NO. 06-C-93

DAVID BALLARD, WARDEN,
MT. OLIVE CORRECTIONAL COMPLEX,

               Respondent.

# ORDER

Currently pending before the Court is Petitioner, Yasser Abdelhaq's (hereinafter "Petitioner") Petition for Writ of Habeas Corpus. After considering the Petition, the response in opposition, the applicable law and the Court file, and after considering the evidence and argument submitted during the Final Omnibus Habeas Corpus hearing of August 2, 2016, the Court is prepared to issue its decision.

## I.
## FACTUAL/PROCEDURAL HISTORY

This action was initiated in February 2006 and was assigned to The Honorable Arthur Recht (retired). Judge Recht dismissed the original Petition via a summary dismissal Order in approximately March 2006. Petitioner appealed said dismissal in approximately April 2006. On December 6, 2006, the Supreme Court granted Mr. Abdelhaq's Petition for Appeal and remanded the

1

case to Ohio County Circuit Court "for the holding of an omnibus habeas corpus hearing on the issue of ineffective assistance of counsel." *See* Supreme Court Order dated December 6, 2006. The Supreme Court's Order is silent with respect to the balance of the issues raised by Petitioner's Petition for Appeal.

On remand in February 2007, Judge Recht entered a *Losh* Order which included a revised pleading schedule. Additionally, Judge Recht directed Petitioner to file an Amended Petition for Writ of Habeas corpus setting forth each and every ground upon which Petitioner believed he was entitled to relief. Petitioner filed said Amended Petition in December 2007. In January 2008, Respondent filed its response.

After several changes in counsel, Petitioner filed an Omnibus Habeas Corpus Petition in August 2014 by and through his current counsel, Dana McDermott, Esq. In September 2014, Respondent filed its Response to said Petition. Thereafter, Respondent filed a Motion in Limine and/or Motion to Strike, which was granted and precluded Petitioner from raising at the final hearing any claim other than ineffective assistance of counsel.[1]

---

[1] Though much has happened in the intervening years since this matter was remanded to Circuit Court by the Supreme Court of Appeals, the events are not relevant for our purposes. As a result, and in the interest of brevity, they have not been summarized for this Order.

## II.
## PETITION FOR WRIT OF HABEAS CORPUS

### A. Petitioner's Arguments

Petitioner argues that he received ineffective assistance of counsel during the underlying proceedings. Specifically, he argues that his attorneys were ineffective because they (1) failed to object to prosecutorial misconduct; (2) they failed to object to a faulty jury instruction; and (3) they failed to ask the trial court to determine whether Defendant/Petitioner's agreement to ask the jury for a conviction of second-degree murder was knowingly and willfully made.[2]

With respect to Petitioner's contention that his attorneys failed to object to prosecutorial misconduct, Petitioner alleges three (3) instances of such misconduct and failure to object. Instance one (1) allegedly occurred during the prosecuting attorney's closing argument at trial in July 2004 at which time Petitioner alleges the prosecutor "intentionally misstated" well-settled law regarding premeditation and deliberation. Petitioner avers that this intentional misstatement prejudiced Petitioner in that it made a first-degree murder conviction more likely.

Instance two (2) allegedly occurred when the prosecuting attorney intentionally attacked the credibility of a defense expert witness, Mace Beckson, M.D. without commenting in any way on the substance of the evidence presented or the expert witness's methodology. Petitioner argues that the prosecuting

---

2 During the underlying criminal proceedings, Petitioner was represented by Robert McCoid, Esq. and John Pizzuti, Esq., both of whom were present and testified under oath during the Final Omnibus Habeas Corpus Proceeding. For the sake of brevity, their testimony will not be summarized in the instant Order.

attorney inserted his personal opinion regarding the expert, which is improper and asks that the conviction be reversed as a result.

Finally, Petitioner contends instance three (3) occurred when the prosecuting attorney made improper arguments concerning whether Petitioner is entitled to mercy during closing arguments. Such arguments were improper because the guilt and mercy phases of Petitioner's trial had been bifurcated. Petition avers that, such improper arguments, taken cumulatively, amount to Petitioner having received an unfair trial.

Petitioner also argues that defense counsel failed to object to a faulty jury instruction. Specifically, Petitioner maintains that the trial judge erred by including in the instructions to the jury that "the use of a deadly weapon allows an inference of malice and intent to kill in the commission of a crime." The trial judge later repeated the instruction, adding "unless the State's own evidence demonstrates circumstances affirmatively showing an absence of malice." Petitioner argues that the trial judge failed to give the complete *Brant* instruction (*State v. Brant*, 252 S.E.2d 901, 162 W.Va. 762 (1979)). The entire instruction should have included: "which would make an inference of malice from the use of a deadly weapon alone improper, a conviction for second degree murder cannot be upheld." Petitioner contends this omission may have caused the jury to presume malice rather than infer malice, thus relieving the State from having to prove every element of the offense beyond a reasonable doubt.

Petitioner claims that defense counsel failed to ask the trial court to

4

determine if Petitioner's agreement to ask the jury for a conviction on the murder charge was knowingly and willfully made. In so arguing, Petitioner acknowledges that this is not presently required under West Virginia law. Nevertheless, Petitioner argues that courts strongly prefer that such an agreement between Defendant and counsel be on the record in open court and memorialized in a court transcript. *See Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969).

### B. Respondent's Arguments

Respondent contends that defense attorneys McCoid and Pizzuti aggressively pursued discovery, filed relevant and appropriate pretrial motions, and pursued expert support for their defense theories, as evidenced by a review of the underlying criminal file. Respondent opposes Petitioner's contention that he received ineffective assistance of counsel.

Additionally, and with respect to Petitioner's specific contentions, Respondent argues that the prosecutorial statements which Petitioner argues constitute prosecutorial misconduct, do not in fact constitute misconduct. Respondent further argues that, to the extent said statements are or were improper, which Respondent denies, said statements do not rise to a constitutional violation.

Respondent also argues that the jury instruction given pursuant to *State v. Brant* was not faulty, but was appropriate. Respondent further notes that the facts contained within *State v. Brant* were unique and entirely different than

5

those presented in the underlying criminal action.

## III.
## APPLICABLE LAW

West Virginia Code § 53-4A-1 provides those persons convicted and incarcerated pursuant to said conviction the ability to file a Petition for Writ of Habeas Corpus if they believe that:

> there was such a denial or infringement of [their] rights as to render the conviction or sentence void under the Constitution of the United States or the Constitution of this State, or both, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under the common law or any statutory provision of this State.

Such a person can file a Petition for Writ of Habeas Corpus, and seek

> release from such illegal imprisonment, correction of the sentence, the setting aside of the plea, conviction and sentence, or other relief, if and only if such contention or contentions and the grounds in fact or law relied upon in support thereof have not been previously and finally adjudicated or waived in the proceedings which resulted in the conviction and sentence, or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings which the petitioner has instituted to secure relief from such conviction or sentence.

The contention or contentions raised in the Petition for Writ of Habeas Corpus will be considered waived or previously adjudicated if:

> the petitioner could have advanced, but intelligently and knowingly failed to advance, such contention or contentions and grounds before trial, at trial, or on direct appeal (whether or not said petitioner actually took an appeal), or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings instituted by the petitioner to secure relief from his conviction or sentence, unless such contention or contentions and grounds are such that, under

6

the Constitution of the United States or the Constitution of this State, they cannot be waived under the circumstances giving rise to the alleged waiver.

If such contention or contentions are considered waived, there is a rebuttable presumption that the petitioner intelligently and knowingly failed to advance such contention or contentions and grounds. *See* W.Va. Code § 53-4A-1.

> A prior omnibus habeas corpus hearing is res judicata as to all matters raised and as to all matters known or which with reasonable diligence could have been known; however, an applicant may still petition the court on the following grounds: ineffective assistance of counsel at the omnibus habeas corpus hearing; newly discovered evidence; or, a change in the law, favorable to the applicant, which may be applied retroactively.

*Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981).

W. Va. Code § 53-4A-2 also provides in relevant part that the Petition for Writ of Habeas Corpus "shall...specifically set forth the contention or contentions and grounds in fact or law in support thereof upon which the petition is based, and clearly state the relief desired."

Finally, according to W. Va. Code § 53-4A-3(a), the Court has the discretion to deny the Writ if the Court is satisfied, after reviewing the petition, affidavits, exhibits, records and other documentary evidence attached thereto, or the record in the proceedings which resulted in the conviction and sentence, that the petitioner is entitled to no relief.

7

## IV.
## DISCUSSION

After considering Petitioner's written briefs, Respondent's opposition, the applicable law and the Court file, including the underlying criminal file, and after considering the evidence and argument submitted during the hearing of August 2, 2016, the Court is satisfied that the instant Petition for Writ of Habeas Corpus should be **DENIED**.

Petitioner alleges that he received ineffective assistance of counsel during his 2004 criminal trial. Petitioner's ineffective assistance of counsel claim is governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), i.e. (1) whether counsel's performance was deficient under an objective standard of reasonableness; and (2) whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

In syl. pt. 2 of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974) the Supreme Court provided guidance as to how to evaluate an ineffective assistance counsel of claim:

> Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused.

With these standards in mind, the Court will now evaluate Petitioner's ineffective assistance of counsel claim.

8

## A. Prosecutorial Misconduct

### 1. Instance One – Premeditation in an "instant"

Petitioner argues that, during closing arguments, the prosecutor intentionally misstated the law regarding the time it takes to premediate or deliberate a murder. Petitioner maintains that the prosecuting attorney's statement that premeditation can occur in an "instant" was an intentionally made, incorrect statement of the law and that Petitioner's trial counsel should have objected to the same. Petitioner argues that, because his counsel failed to object to this misstatement of the law, Petitioner was prejudiced in that said misstatement of the law made a conviction of first-degree murder more likely. The Court disagrees.

Prior to closing arguments, the Court instructed the jury on the pertinent law, which included law regarding the time needed to premediate or deliberate a murder. Further, the jury was instructed that nothing said or done by the attorneys should be considered evidence, and that they must base their verdict solely on the evidence before them. The jurors were provided with a written copy of the Court's instructions, which they had available to them in the jury room during deliberations. Given the above, the Court does not believe it likely that the jurors relied upon the prosecutor's utterance regarding premeditation in an "instant" to unanimously convict Petitioner of first degree murder.

The Court would also note that, although Petitioner claims the prosecuting attorney intentionally misstated the law regarding premeditation and

9

deliberation during his closing argument, Petitioner has not provided evidence to support said allegation. Moreover, the Petitioner has not developed evidence to show that any of the jurors did in fact rely upon the prosecuting attorney's utterance to convict Petitioner.

For all of these reasons, the Court cannot find that Petitioner's trial counsel's failure to object to the above-noted statements as made during the closing argument of the prosecutor was deficient under an objective standard of reasonableness. Further, the Court cannot find that there is a reasonable probability that, but for trial counsel's failure to object, the outcome of the trial would have been different. Accordingly, the Court **FINDS** this assignment of error is without merit.

## 2. Instance Two – Personal Opinion of Prosecutor

Petitioner additionally claims that, during his closing argument, the prosecuting attorney offered his personal opinion regarding the credibility of defense expert witness, Mace Beckson, M.D. Petitioner contends that it was improper for the prosecuting attorney to do so, pursuant to *State v. Critzer*, 167 W.Va. 655, 280 S.E.2d 288 (1981). Petitioner notes that, in *Critzer*, the court reversed defendant's conviction because of the prosecutor's improper comments on the credibility of a defense witness. Similarly, Petitioner asks that the Court reverse Petitioner's conviction.

The Court has reviewed and considered the statements made by the prosecuting attorney during his closing argument, as well as Petitioner's

10

arguments regarding the same and applicable statutory and case law. The Court has additionally considered Petitioner's cited case of *State v. Critzer*. After considering all of the above information, the Court is satisfied that this argument is without merit.

Initially, the Court again notes that the jury was instructed that nothing said or done by the lawyers or the Court was to be considered evidence. Rather, their verdict must be based upon the evidence and testimony submitted during the trial.

Notwithstanding the above, and assuming the jury based its verdict in any part upon the statements made by the prosecuting attorney during closing arguments, the Court nevertheless does not believe that the prosecuting attorney's statements can be fairly read as attacking the credibility of the defense's expert witness "without commenting, in anyway, on the substance of the evidence presented or the expert witness's methodology," as Petitioner contends. Rather, a reading of the relevant pages in the trial transcript reveals that the prosecuting attorney's attack upon the credibility of expert witness Mace Beckson, M.D. was woven into a larger attack upon the theories of Dr. Beckson.

Assuming *arguendo* that the prosecuting attorney's credibility attack was made without commenting upon the substance of the evidence presented or the expert witness's methodology, the Court is nevertheless satisfied that the statements made by the prosecuting attorney do not rise to the level of those statements made in *Critzer*. In *Critzer*, the prosecutor

11

injected his personal opinion as to the guilt of defendant, asserted his belief in the honesty, sincerity, truthfulness, and good motives of his witnesses, while attacking the honesty and veracity of the defendant's witnesses. He compared the defendant to a vulture and appealed to local prejudice by indicating the defendant came to West Virginia to victimize dumb hillbillies. On several occasions during the course of the argument he pointed to and directly addressed the defendant. He also argued facts not in evidence....The prosecutor's manifest purpose could only have been to inflame the minds of the jury in order to gain a conviction based on emotions rather than evidence.

See *Critzer, supra* at 660-661. The same is not the case here.

In the instant matter, Petitioner has cited to page 1384, ln 15-24 and page 1385, ln 1-3 of the trial transcript as support for his claims. The transcript captures the prosecuting attorney's statement thusly:

Now, c'mon! Here's a man that comes from California to West Virginia to testify about a report he did on someone he never even saw in a murder case. And he's concerned about saving a couple pieces of paper?

The Court is satisfied that these statements are clearly different than those made in *Critzer, supra*. In the case *sub judice*, there is no evidence or argument that the prosecuting attorney injected his personal opinion regarding the guilt of Petitioner, or asserted his belief as to the honesty...etc. of the State's witnesses while disparaging witnesses for the defendant. There is no evidence or argument that the prosecuting attorney insulted any witness or the Petitioner during closing arguments; nor is there any evidence or argument that the prosecuting attorney argued facts not in evidence. Rather, and as the Supreme Court noted in *State v. Garrett*, 182 W. Va. 166, 177, 386 S.E.2d 823 (1989), the Court is satisfied that a "wide latitude must be given to all counsel in connection

12

with final argument....every improper remark is [not] a proper basis for a mistrial." Therefore, the Court **FINDS**, assuming this statement was in error, it was harmless. As a result, the Court **FINDS** Petitioner's trial counsel's failure to object to this statement does not constitute a performance by counsel that could be considered deficient under an objective standard of reasonableness. Therefore, the Court **FINDS** this assignment of error is without merit.

### 3. Instance Three – Mention of "Mercy"

Petitioner next argues that the prosecuting attorney improperly injected issues regarding sentencing into the bifurcated trial[3] by arguing that he had already been shown "mercy" because he was alive as opposed to the victim, Dana Tozer, who had died. Petitioner cites to pg. 1671, ln 22-25 and p. 1672, ln 1-5 of the transcript to support his argument. Petitioner avers that such a statement was designed to persuade the jury that the Petitioner was already getting one form of mercy and should not be granted additional mercy by the jury. Petitioner claims that he was prejudiced by these statements in that they made a conviction of first degree murder more likely and his trial counsel should have objected to the same. Petitioner cites *State v. Mills*, 219 W.Va. 28, 631 S.E.2d 586 as support for this argument.

In *Mills, supra*, defendant was convicted following a jury trial of first degree murder with use of a firearm. His first conviction was reversed and remanded for new trial. On remand, defendant was again convicted of first degree murder. Again he appealed. On appeal, defendant argued, among other things, that the

---

3 As the record reflects, the guilt phase of this trial was bifurcated from the sentencing phase.

13

prosecutor's comments during closing argument constituted an impermissible attempt to equate the sentence of life without mercy to mercy. The defendant argued that he was prejudiced by these statements and that his conviction should be reversed. *See Mills, supra* at pgs. 34-36.

In reviewing these arguments, the Supreme Court commented as follows:

> The prosecutor's comments in the present case were extremely unconventional to the extent that the prosecutor's intent was apparently to equate "life without mercy" to "mercy". In other words, because the Appellant was not being subjected to the death penalty, mercy had already been tendered. That is a drastic mischaracterization of the concept of mercy and was clearly designed to persuade the jury that the Appellant was already getting one form of mercy and should not be granted additional mercy by the jury. We therefore find that the prosecutor's remarks in the present case were clearly in error. Such a reference to the absence of the death penalty as constituting mercy has no place in the closing arguments of any prosecutor and should not be repeated.

*See Mills, supra* at 36.

The Court further noted that, while the Court might reverse a conviction in some circumstances based upon the prosecutor's words, the Supreme Court declined to do so in the *Mills* case. The Court analyzed the prosecutor's remarks through the lens of the case *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995), and found that the prosecutor's remarks were of limited duration, were not extensive or overly coercive toward the jury. There was no indication that the comments were placed before the jury to distract them to extraneous matters and that defendant was not clearly prejudiced by them and the comments did not result in manifest injustice, particularly in light of the fact that this was the second jury that had reviewed the evidence and convicted defendant without a

14

recommendation of mercy. *See Mills, supra* at 36 (internal citations and quotations omitted).

The Court **FINDS** the instant case is analogous to the *Mills* case. Indeed, the prosecutor's statements regarding mercy were of limited duration, much more limited than those comments at issue in *Mills*. They were not extensive or overly coercive toward the jury. There is no evidence or indication that the prosecutor placed those comments before the jury to divert the jury's attention to extraneous matters. Finally, the Court is satisfied that defendant was not clearly prejudiced by them and the comments did not result in manifest injustice. In support of this finding, the Court notes, as did the *Mills* Court, that this is the second conviction for first degree murder rendered by a jury after review and consideration of the evidence.

Given the very limited scope of the prosecutor's comments at issue and given the lack of evidence that these comments were placed before the jury to distract them to extraneous matters or that defendant was clearly prejudiced by them, the Court **FINDS** that Petitioner's trial counsel's failure to object to this statement does not constitute a performance by counsel that could be considered deficient under an objective standard of reasonableness. Therefore, the Court **FINDS** this assignment of error is without merit.

### 4. Unfair Trial

Petitioner asserts that the cumulative effect of the above-described failures/errors resulted in an unfair trial, which violates his Constitutional right

15

to a fair trial by a jury of his peers. For the reasons set forth above, the Court would disagree. Consequently, the Court **FINDS** this argument to be without merit.

## B. Jury Instruction

Petitioner argues that the trial judge erred by instructing the jury that "the use of a deadly weapon allows an inference of malice and intent to kill in the commission of a crime." Later, the trial judge repeated this instruction and added "unless the State's own evidence demonstrates circumstances affirmatively showing an absence of malice." Petitioner claims the trial judge left out the following language: "which would make an inference of malice from the use of a deadly weapon alone improper, a conviction for second degree murder cannot be upheld." Petitioner contends that the instruction given by the trial judge caused the jury to presume malice rather than infer malice, which relieved the State from having to prove every element of the offense charged beyond a reasonable doubt, and that as a result, his trial counsel should have objected. Failure of his trial counsel to object to this faulty instruction constitutes ineffective assistance of counsel.

The trial instruction with which Petitioner takes issue was taken from *State v. Brant*, 252 S.E.2d 901, 162 W.Va. 762 (1979). Syllabus point 2 of *Brant, supra* provides as follows:

> Malice may be inferred from the intentional use of a deadly weapon; however, where the State's own evidence demonstrates circumstances affirmatively showing an absence of malice which would make an inference of malice from the use of a deadly weapon

16

alone improper, a conviction for second degree murder cannot be upheld.

In the underlying matter, Petitioner alleges the jury was instructed thusly:

> The use of a deadly weapon allows an inference of malice and intent to kill in the commission of a crime...unless the State's own evidence demonstrates circumstances affirmatively showing an absence of malice.

After reading the two instructions together, the Court does not believe that a substantive difference exists between the two. Although the instruction which Petitioner contends was provided to the jury appears to be missing the sentence "which would make an inference of malice from the use of a deadly weapon alone improper, a conviction for second degree murder cannot be upheld", the Court believes this sentiment is merely a redundancy, eliminated by the trial court because the same is implied by the Trial Court's use of the word "unless" in its instruction. Consequently, the Court does not believe it was error for defense counsel to fail to object to the same.

Assuming *arguendo* that the instruction was faulty and it was error for trial counsel to fail to object to the verbiage used in the *Brant* instruction, the Court is nevertheless satisfied that this argument is without merit because there is no evidence or indication that such a failure resulted in a different outcome vis-à-vis the jury's verdict. Indeed, the balance of the Court's instructions advised the jury of the State's burden to prove their case beyond a reasonable doubt, which burden included the element of malice and Petitioner has not provided any evidentiary support that the jury did not independently weigh and

17

consider the evidence in the criminal matter as it pertained to malice.

Finally, the Court would agree with Respondent in that there was no evidence of malice the *Brant* case. Conversely, in the instant case, there was evidence of malice, including but not limited to the fact that the victim was a paraplegic, bound to a wheelchair who was stabbed over 200 times in the torso. Additionally, the Court acknowledges evidence of a note which was left accusing the victim of being a 'narc' (presumably demonstrating motivation for Petitioner's actions).

Accordingly, and for all of the foregoing reasons, the Court is satisfied that trial counsel's failure to object to the above-noted jury instruction does not constitute ineffective assistance of counsel because it does not constitute a performance deficient under an objective standard of reasonableness, and because there is no evidence to support the conclusion that, but for this failure to object, Petitioner's conviction would not have occurred. Therefore, the Court **FINDS** this assignment of error is without merit.

## C. Failure of Defense Counsel to Record Defense Strategy on the Record

Petitioner contends that his trial counsel should have obtained his consent, on the record, for the defense strategy at trial to essentially concede the fact that he committed second degree murder and to argue *against* first degree murder. Petitioner further argues that, the "lack of record or memorialization of the alleged agreement between the Defendant/Petitioner and his two trial defense counsels is a violation of a constitutional safeguard, the right against

18

incrimination, and another instance of ineffective assistance of trial counsel in the underlying criminal case."

In support of his argument, Petitioner relies upon *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969). A review of *Boykin, supra*, reveals that the United States Supreme Court reversed a conviction obtained by guilty plea for a man who had pled guilty to five indictments of common law robbery because, at the time defendant entered his guilty plea, the trial judge failed to inquire as to whether the guilty plea was knowing and voluntary. *See Boykin, supra* at 242-244.

Petitioner also cites to the case of *Wiley v. Sowders*, 669 F.2d 386 (6th Cir.) in support of his argument. There, petitioner, Elmer Lee Wiley, brought a Petition for Writ of Habeas Corpus relief and argued, among other things, that he received ineffective assistance of trial counsel because of trial counsel's admission during closing argument that Mr. Wiley was guilty of first degree burglary and theft. Mr. Wiley's trial counsel argued for leniency and that there were mitigating circumstances to the case. The Court could not conclude that he had received ineffective assistance of counsel because the Court did not have evidence concerning whether or not Mr. Wiley consented to such a strategy. Though the Court remanded for an evidentiary hearing to determine whether Mr. Wiley consented to such strategy, the Court held as follows:

> We conclude that an on-the-record inquiry by the trial court to determine whether a criminal defendant has consented to an admission of guilt during closing arguments represents the preferred practice. But...we do not now hold, that due process

19

requires such practice.

*See Wiley, supra* at 389.

After considering Petitioner's arguments and the cited case law, the Court is satisfied that this argument is without merit. In so holding, the Court notes that *Boykin* does not stand for the proposition for which Petitioner has cited it. It does not discuss the need to record on the record a criminal defendant's consent to a trial strategy of conceding guilt. Further, the *Wiley* case is not a West Virginia State case. Rather, it is a Sixth Circuit Court of Appeals case. As such, it is not binding precedent upon the State Courts of West Virginia.

Moreover, even if *Wiley* were binding precedent, the Sixth Circuit Court clearly held that due process does not require the recording on the record of a criminal defendant's consent to trial strategy which includes a concession of guilt. As a result, the Court **FINDS** this assignment of error is without merit.

## VI.
## CONCLUSION

Accordingly, and for all of the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus is hereby **DENIED**.

It is so **ORDERED**.

It is further **ORDERED** that the clerk of the Court shall send attested copies of this Order to Scott Smith, Esq., Assistant Ohio County Prosecuting

20

Attorney, 1500 Chapline Street, 2nd Floor, Wheeling, WV 26003; and Dana McDermott, Esq., 3396A Winchester Avenue, Martinsburg, WV 25405-2451.

ENTERED this 29th day of December, 2016.

_____
JAMES P. MAZZONE, JUDGE

A copy, Teste:

_____
Circuit Clerk

21